[Crim. No. 987.   Fourth Dist.   June 28, 1955.]

THE PEOPLE, Respondent, v. WENDELL HAVEL et al., Appellants.

Wendell Havel, in pro. per., and Francis Gordon Robinson for Appellants.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

*Assigned by Chairman of Judicial Council.

GRIFFIN, J.—Both defendants, in propria persona, appealed from their "conviction and sentence." Defendant Havel alone has filed a brief on appeal. He was convicted and sentenced as charged in count one, with violating section 4534 of the Penal Code in that he did, on September 6, 1954, and September 11, 1954, unlawfully assist defendant Robinson, a paroled prisoner whose parole had been revoked, in attempting to escape from jail. And in count two, he was charged with defendant Robinson with the crime of violating section 182 of the Penal Code, i.e., that on said dates they conspired together in violating section 4534 of the Penal Code. Several overt acts are set forth, namely, that they solicited one Easley to procure hack-saw blades and he did bring them into the jail; that defendants used said blades to cut the bars; and that they solicited one O'Connor to procure, and he did procure a piece of cotton rope to effect said escape.

Defendants, appearing with counsel, pleaded not guilty to the charges and a jury convicted them on all charges indicated. The trial court set a date for the hearing of the report of the probation officer and to sentence defendants. This date was subsequently continued to December 13, 1954, with the consent of defendants' counsel. Apparently, on that date the matter was continued to December 15, at the request of the probation officer. On December 15, according to the minutes of the court, the defendants were present without their counsel. The court considered the probation officer's report and probation was denied. Defendants, without the presence of their counsel, were arraigned for judgment, and the minutes show: "No legal cause" why judgment should not be pronounced. Havel was sentenced to prison on both counts, sentences to run consecutively, and Robinson's term was to run "consecutively to any unserved sentence heretofore pronounced."

It appears that in November, 1953, defendant Havel was picked up in El Centro on a warrant for escape from the Riverside jail. At that time he was questioned about it and he said to the officers that he got within a few miles of the border this time and "next time I will make it."

On August 28, 1954, he was confined in the Riverside County jail with defendant Robinson, whose parole had been revoked, together with other prisoners, including one Rippey, who was a painter and barber who had trusty working privileges throughout the jail.

Rippey testified generally that on or about that date Havel and Robinson, trusties in the jail, discussed with him plans about escaping from the jail, i.e., that they were going to get the guards separated, overpower them, tie them up, obtain the key to the penthouse on the roof, secure a rope used as a clothesline to dry clothes, obtain civilian clothes from Robinson, who was the trusty having charge of the prisoners' civilian clothes, and escape by means of a rope suspended from the roof. Rippey stated he did not agree to this plan because he was not in favor of any violence in reference to the guards; that thereafter they approached him again and told him of their arrangements to obtain some hack saws and saw the bars in the "recreation tank"; that when they later, on September 7, produced the three blades, he said he would go along with the plan; that at night Havel awakened him and said they were ready to commence sawing and the three of them took turns in sawing the bar and standing watch; that when the sawing of one bar was about completed (photographs of the sawed bar were received in evidence) Robinson thought they were making too much noise and proposed another plan, i.e., that he and Rippey would induce another prisoner (O'Connor) to drink some floor soap which would make him sick and he would be taken to the county hospital; that he would then size up the situation as to escaping from the hospital and then they would do the same thing, be taken to the hospital, and then escape according to the plans agreed upon.

O'Connor testified about their plans for drinking the soap and said both Havel and Robinson asked him to obtain two pieces of rope which he secured and gave to defendants; that they later asked him to obtain two pair of barber shears from Rippey without Rippey knowing it, and he did this and kept them on his person until either Robinson or Havel asked for them; that when he offered them to defendants they said it was too late to do anything, so he gave them back to Rippey. It appears that O'Connor did drink the soap but it failed to make him sick enough to take him to the hospital. Apparently, some other plans were made involving two pairs of scissors which Rippey used for barber purposes, because they were missing from his kit on September 11th. Rippey said he heard defendants say something about more drastic action in reference to their escape and the possible use of some weapon such as barber shears; that he did not believe in any such violence and accordingly

told one of the deputies of his suspicion of the contemplated plans of escape; and that Havel had said he hoped a deputy by the name of Rhymer would be the one involved as he had had some trouble with him on some other occasion and did not like him.

Easley testified he discussed escape plans with defendants, and Robinson asked him to obtain some saw blades for him and promised Easley some packages of cigarettes for his service; that he did bring the blades into the jail in the sole of his shoe, according to the method he related to Robinson the night before, and left them at the door of the "tank"; and that two days later he received some packages of cigarettes from Robinson. The shoe with the loosened sole was identified by Easley.

A deputy sheriff testified that after talking to Rippey he found the bar sawed, as indicated by him; that he questioned Robinson, who, after denying any knowledge of such plans, finally stated he was afraid he was being involved in this plan by other prisoners and he wanted to admit removing the saw blades from the shoe; that there was a length of rope ordinarily kept in the exercise area for drying clothes, and a disaster rope, about 150 feet in length, was kept on the roof of the jail under lock and key; that the jailer on duty on the floor where defendants were kept had the key to this door as well as the door leading to the roof; that he remembered O'Connor being reported as sick; and that the shoes in evidence were found in the prisoners' clothing storage room over which Robinson had charge.

One Wheelis, who worked as a trusty at the training center, testified that Rippey asked him to obtain some saw blades but he refused; that he saw Easley place hack-saw blades in his shoe at the center; that Easley told him he was taking them into the jail to give them to Robinson; that Havel, about that time, asked him if he wanted to escape at night with him from the jail and he told Havel that he was not interested because he was going ahead and serve his time.

Havel testified he asked Wheelis about taking part in an escape but that it was just talk and he forgot about it because he decided to try and obtain parole and never would take part in any attempted escape of Robinson. Other prisoners implicated Rippey as being involved in the attempted escape.

Robinson denied any attempt to escape and admitted he told officers, when being questioned about the saw blades,

that "For the moment we will say I am guilty, that I did have hack saws. I still don't see what a statement on my part concerning that, how that would affect Mr. Havel. That is only an admittance of guilt on my part."

The first contention made on this appeal is that Havel was improperly convicted of both a violation of Penal Code, section 4534, and a conspiracy to violate that section because the same acts and intent were involved in both charges. It has been repeatedly held in this state that a prosecution may be had for either a conspiracy or a crime committed in pursuance thereof, and a conviction thereon may be had for both the conspiracy to commit a crime and the consummated crime committed in pursuance of its purpose.

In *People* v. *Martin,* 114 Cal.App. 392, 396 [300 P. 130], defendant was charged with bribery and conspiracy to commit bribery. It was there held that the crime of conspiracy is a distinct offense from the actual commission of the crime forming the object of the conspiracy, and the fact that the parties to the conspiracy succeeded in perpetrating the acts which of themselves constitute the crime they conspired to commit, in no wise relieves them from liability under section 182 of the Penal Code. In such prosecution the parties may be legally convicted of both crimes and the conviction does not constitute double jeopardy. See also *People* v. *Hoyt,* 20 Cal.2d 306, 317 [125 P.2d 29]; and *People* v. *Gordon,* 71 Cal.App.2d 606, 629 [163 P.2d 110].

The claim that Robinson was guilty of the charges set forth in the first count, and accordingly the failure to charge and convict him on that count rendered Havel's conviction on that count void is without merit. Robinson was not charged with nor acquitted of this offense.

The next argument is that the trial court "faked and falsified" the transcripts; that the records were false, and that Havel was convicted on perjured testimony. The transcripts were duly certified as correct, and there is no showing to the contrary nor that the finding of the jury was predicated on perjured testimony. Accordingly, there is no merit to this contention. (*People* v. *Stinchcomb,* 92 Cal.App.2d 741, 746 [208 P.2d 396]; *People* v. *Mooney,* 178 Cal. 525, 529 [174 P. 325].)

The evidence was sufficient to support the verdicts. The corpus delicti was sufficiently established and the testimony of the accomplices was sufficiently corroborated by other evidence. (*People* v. *Henderson,* 34 Cal.2d 340, 342 [209 P.2d

785] ; *People* v. *Trujillo,* 32 Cal.2d 105, 110 [194 P.2d 681].)

The claim that defendants were not represented by their attorney at the time of the probation hearing and when judgment was pronounced upon them is supported by the evidence. The minutes of the court show that only the attorney for the prosecution was present and that defendants were "without counsel." The reason for proceeding in the absence of defendants' counsel is not shown and no waiver of that right is indicated by the record. The trial court, after denying probation, asked the defendants if they had any legal cause to show why judgment should not be pronounced, and the only entry indicated is "No legal cause." Defendant, in his brief, states that defendants were "denied the right to counsel" by the actions of the trial court.

█ It is a fundamental principle that persons charged with and convicted of public crimes are entitled to the services of their attorneys at all stages of the proceedings, and this includes arraignment for judgment when defendants are asked if they have any legal cause to show why judgment should not be pronounced. A defendant does have certain substantial rights at that time and it may be only a trained legal mind that would understand the significance of this query. *In re Levi,* 39 Cal.2d 41, 45 [244 P.2d 403], involved a similar occurrence. It was there held that the constitutional right of the accused to have counsel in "criminal prosecutions" (Const., art. I, § 13) is not applicable to a hearing preceding revocation of probation, since a probation proceeding is not part of a "prosecution," but an arraignment for judgment is a "criminal prosecution" within the meaning of that article, and an accused therefore has the right to counsel at the time of pronouncement of judgment; and that a judgment pronounced against the accused in the absence of counsel is vulnerable to attack by habeas corpus. It is therein stated that defendant's failure to request counsel could not be amplified into a waiver of his right to counsel. (See also *People* v. *Fields,* 88 Cal.App.2d 30 [198 P.2d 104].)

Under the authority of these cases and those cited therein, it was error to arraign defendants and pronounce judgment in the absence of their counsel. Since there appears to be no other error and the judgment is fully supported by the evidence, defendants should again be arraigned for judgment and if again sentenced to prison, their confinement, based upon the invalid judgment, should be credited upon the new commitment. (Pen. Code, § 2900.1.)

The judgment is reversed and the cause remanded, but for the sole purpose of rearraigning the defendants for judgment and the pronouncing of judgment. (*People* v. *Fields, supra.*)

Barnard, P. J., and Mussell, J., concurred.