[Civ. No. 24451. First Dist., Div. Two. June 27, 1968.]

JOHN CARROLL RIDGE, Plaintiff and Respondent, v. CALABRESE SUPPLY COMPANY et al., Defendants and Appellants; STATE COMPENSATION INSURANCE FUND, Intervener and Respondent.

Hoge, Fenton, Jones & Appel and Lewis L. Fenton for Defendants and Appellants.

J. Adrian Palmquist, Panelli & Agliano, John J. Lane and Robert R. Hall for Plaintiff and Respondent.

T. Groezinger, Loton Wells and Carl J. Weber for Intervener and Respondent.

AGEE, J.—In this personal injury action, defendant Calabrese Supply Company appeals from an order granting plaintiff's motion for a new trial, which order specifies that it is made solely upon the ground of the "insufficiency of the evidence to justify the verdict" against plaintiff. (Code Civ. Proc. § 657, subd. 6.)

Plaintiff was struck on the back of his head by a steel chute extending from the rear of a cement mixer truck owned by Calabrese and operated by its employee, one Wallace. The *sole* issue as to liability is whether *one* of the proximate causes of the accident was negligence on the part of Calabrese's said employee. There is no contention that plaintiff was contributorily negligent.

The trial court's order states: "After weighing the evidence, the Court is convinced from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a contrary verdict." (Code Civ. Proc. § 657.)

The *only question* raised by Calabrese on appeal is whether the trial court sufficiently complied with the following provision of section 657 of the Code of Civil Procedure: "When a new trial is granted, . . . the court shall specify . . . the court's *reason or reasons* for granting the new trial upon *each* ground stated." (Italics ours.) Here, of course, there is only *one* ground stated.

*Facts*: Plaintiff was employed as a mason by contractor Dusharme in the construction of a foundation for an apartment building on the northwest corner of McClellan Avenue and Belden Street, Monterey. McClellan runs north and south and Belden east and west.

At the time of the accident plaintiff was working on a wall running parallel with McCelllan, referred to herein as the "front wall." Work was also in progress on the intersecting wall paralleling Belden, referred to herein as the "side wall."

The lot sloped downward from the building site toward both McClellan and the north. There was a 6-foot wide, 5-foot deep ditch which ran along the outside of the front wall. Scaffolding was in place along the inside of both walls.

The Calabrese truck, driven by its employee, one Wallace,[1] arrived with a load of cement to be used in "grouting" the walls. It had the usual large rotating drum or barrel contain-

---

[1] Wallace was originally a defendant but the action was dismissed as to him during trial and his purported appeal herein is hereby dismissed.

ing the cement and a 9-foot permanent chute through which the cement is poured. By attaching extensions, this chute can be lengthened to 21 feet, which was its length at the time of the accident.

A combination hydraulic-electrical lift device, operated by push buttons from the rear of the truck, controls the up and down movement of the chute, but there is no mechanical control for the lateral movement of the chute. There are ''travel locks'' which will hold the chute in a fixed position when moving the truck to a new position. These were seldom used because the moving of the truck on the jobsite is time consuming.

When the truck arrived, Dusharme told driver Wallace where the cement was to be poured. Wallace backed the truck up to the edge of the ditch running along the front wall, near its junction with the side wall. The rear wheels of the truck were approximately 3 feet higher than the front wheels, due to the upward slope from McClellan. The left or driver's side of the truck was lower than the right side, due to the south to north downgrade of the lot adjacent to the front wall.

The first pouring from the truck, with its 21-foot extended chute, was made into the concrete blocks forming the side wall, which was then 3 feet higher than the front wall. Dusharme and one of his employees, Jackson, were hand-guiding and controlling the lateral movement of the chute.

When this pouring was completed, it became necessary to lift the chute over an obstructing batter board[2] in order to position it for another pour along the front wall. Wallace, the truck driver, stood at the rear of the truck operating the lift device, while Jackson stood on the inside of the wall at the end of the chute and Dusharme stood on the other side of the chute, near its middle and on the outside of the wall.

In an attempt to guide the chute over the obstructing batter board, the men lost control of it. Because of the angle at which the truck was standing, gravity caused the chute to swing downhill toward the north. The chute with extensions weighed approximately 200 pounds and at the time contained several hundred pounds of cement.

Plaintiff was at the time laying building blocks on the front wall. He was on a scaffold inside the wall, which was approximately 5 feet off the ground. The wall at this point was only 8

[2]Batter board is a construction term referring to stakes or boards from which strings are run in order to square up the building blocks as the walls are being constructed.

to 16 inches above the scaffold, so that he was practically working at his feet in a bent-over position. The out-of-control chute ended its downward swing by knocking out a portion of the wall and striking plaintiff on the back of the head. Wallace yelled "Duck your head" when the chute started to swing and another nearby workman was able to flatten out and thus escape being hit.

Wallace testified that prior to the accident he had raised the chute to its maximum height by means of the lift device. However, his other testimony cast serious doubt on this contention. He stated that when the chute went out of control "I had to jump back" in order to avoid being hit by it, while admitting that if the chute had been raised to its maximum height, it would have gone over his head.

In addition to the direct testimony as to the accident, a demonstration of the truck and cement chute was conducted for the jury. During the demonstration certain specific measurements were taken. With the truck standing on level ground the chute could be raised to a height of 5 feet 9 inches.

Wallace admitted that if the truck were on sloping ground and the rear was higher than the front this difference in height would have to be added to the 5-foot 9-inch height mentioned above. He admitted that if such difference in height was 3 feet, as Dusharme testified, this would mean that the chute could be raised to a height of 8 feet 9 inches.

A land surveyor testified in exact figures as to the contours and slope of the lot at the construction site. Using these figures and other known physical factors, including the measurements of the equipment made in the presence of the jury, plaintiff was able to demonstrate with mathematical certainty on the motion for new trial that in order for the chute to have struck the 5-foot wall upon which plaintiff was working, it had to begin its downward arc at a height far below the maximum height to which Wallace could have raised it.

Wallace was well aware of the danger of the type of accident which occurred here. He testified that when, as here, the truck is parked on a sideslope, while being unloaded, gravity will cause the chute to swing to the low side with greater force, particularly when containing the added weight of the cement, and that the chute under such circumstances is very dangerous.

He further testified as follows: "Q. Had your chute ever gotten away before in any manner such as this that happened on this particular day? A. It gets away all the time. Q. Par-

don me? A. It gets away almost all the time." He also testified that "I make it a point to warn everybody, all contractors, to watch the chute, because it is awfully dangerous." He admitted that when a chute gets to swinging as the chute did in this case it hits with tons of force.

*Sufficiency of contents of order granting new trial.*

Code of Civil Procedure section 657 provides in part that "on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict . . . , it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order . . . , and such order shall be reversed as to such ground only if there is no substantial basis in the record for *any* of such reasons." (Italics ours.)

Our Supreme Court, in *Mercer* v. *Perez*, 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], has recently laid down the guidelines applicable herein. The trial court's order in that case reads as follows: " 'The motion for a new trial is granted. The court is of the definite opinion, after analyzing the evidence in this case, that there has been a definite miscarriage of justice. The court is of the opinion that the jury trying this case should have rendered a verdict for the plaintiffs, and against the defendants.' "

The Supreme Court held that, although "the order here challenged should be construed to adequately state the *ground* on which it was granted [i.e., "insufficiency of the evidence to justify the verdict"], . . . it wholly fails to specify the court's *reasons* for doing so." (P. 108.)

■ However, the opinion states that this requirement of section 657 "should be given a reasonable and practical construction. . . . No hard and fast rule can be laid down as to the content of such a specification [of the reason], and it will necessarily vary according to the facts and circumstances of each case. ■ . . . [I]f the ground relied upon is 'insufficiency of the evidence' the judge must briefly recite the respects in which he finds the evidence to be legally inadequate; no other construction is consonant with the conclusive presumption on appeal that the order was made 'only for the reasons specified.' Phrasing the requirement in terms of the codification of the trial judge's power . . . , such an order must briefly identify the portion of the record which convinces the judge 'that the court or jury clearly should have reached a different verdict or decision.' " (Pp. 115-116.)

■■ We are reminded by the Supreme Court that, in the

instant situation, the trial judge is vested with the authority "to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact; on appeal. all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear." (P. 112.)

Subsequent to the *Mercer* case, two Court of Appeal cases have held that the reasons recited by trial courts in their respective orders for new trial on the ground of insufficiency of evidence amounted to substantial compliance with the provisions of section 657. In *Kincaid* v. *Sears, Roebuck & Co.* (1968) 259 Cal.App.2d 733 [66 Cal.Rptr. 915] (hearing denied by the Supreme Court), the following reason was held sufficient: " 'the evidence does not establish by a preponderance thereof that the defendant did not have probable cause for the arrest of plaintiff.' " (*Supra,* p. 738.)

In *Matlock* v. *Farmers Mercantile Co.* (1968) 258 Cal. App.2d 362 [65 Cal.Rptr. 723] (hearing denied by the Supreme Court), the following reason was held sufficient: " 'there being no plea of contributory negligence, and agency and scope of employment being admitted, the case was submitted to the jury for decision upon the issues of negligence of the driver Henry A. Moranda, proximate cause and damages. There was substantial evidence produced at the trial which disclosed that both plaintiffs were injured and both plaintiffs suffered injury as a proximate result of the automobile accident in which the parties were involved. The evidence further discloses substantial evidence that Henry A. Moranda, agent of Farmers Mercantile Co., was negligent in the manner in which he drove the defendant's automobile at the time and place of the accident involved in this case.' " (*Supra,* p 365.)

The order appealed from herein states three reasons for the granting of the new trial. Those numbered one and three[3] do not pertain to the insufficiency of the evidence,

---

[3]These read as follows: "1. The Court is of the opinion that the jury did not understand the true import of the statement of counsel for plaintiff, when he, in the course of his argument to the jury, addressed the Court and said he wished to dismiss the action against the defendant Everett Wallace, the employee of the defendant Calabrese Supply Company, a corporation; that this ill chosen strategy of counsel for the plaintiff left the impression with the jury that the plaintiff was exonerating the said employee of said defendant corporation of negligence; that the jury concluded that if the defendant corporation's employee, Everett Wallace, was not negligent, the defendant corporation could not be held under the rule of *respondeat superior,* overlooking the instruction of the Court that if Everett Wallace was negligent his negligence would be

which is the *sole* ground upon which the order is based.

Reasons one and three attempt to explain *why* the jury was misled when, in the opinion of the trial judge, it "clearly should have reached a contrary verdict."

Reason number two is stated as follows: "2. The Court is of the opinion that since the defendant corporation's employee, Everett Wallace, was in charge of the dangerous instrumentality and was in control of the device to raise and lower the chute, it was his duty to take the precaution to check the arc of the chute to determine whether the maximum height to which the chute could be elevated would safely clear the wall upon which the plaintiff was working at the time the cement mixer was put into operation; that this was a duty that should not have been delegated to anyone else unauthorized or unfamiliar with the actual operation of the particular concrete mixer being used, even though Wallace may have been assisted in the pouring of the cement by the employer of the plaintiff, Dusharme, and by another employee of the latter, Clifton Leon Jackson; . . . "

It is apparent that the determinative issue here is whether there is a "substantial basis in the record" for the foregoing reason. (Code Civ. Proc. § 657.)

As we have seen, Wallace's own testimony establishes that he knew that the chute, particularly when loaded with cement, became a dangerous instrumentality when being moved in the manner attempted here. Thus, the *amount* of

---

imputed to the defendant Calabrese Supply Co., a corporation, his employer. . . .

"3. It is the opinion of the Court that the jury was misled by the questions propounded in the Special Findings, prepared by counsel for the Intervenor, State Compensation Insurance Fund, and submitted with the consent and approval of counsel for all of the parties; that the questions propounded and the answers made by the jury were: 'Was the plaintiff's employer, Wendell P. Dusharme, or the plaintiff's co-employer, Clifton Leon Jackson, negligent? Yes.' 'Was said negligence of either Wendell P. Dusharme or Clifton Leon Jackson a proximate cause of plaintiff's injury? Yes.'; that by these Special Findings the jury was misled into believing that the only remaining culpable persons were the plaintiff's employer, Dusharme, and the plaintiff's fellow employee, Jackson, especially after the dismissal of the action against the defendant corporation's employee, Everett Wallace, by the counsel for the plaintiff during his argument to the jury." (NOTE: These special findings pertain to the rights of Dusharme's workmen's compensation insurance carrier as against Calabrese (see *Witt* v. *Jackson*, 57 Cal.2d 57, 69-73 [17 Cal.Rptr. 369, 366 P.2d 641]) but have no effect upon the issue as to whether there is substantial evidence to support a finding that Calabrese's employee, Wallace, was negligent and that such negligence was *one* of the proximate causes of the accident.)

care to be exercised by Wallace must be measured by the circumstances known by him to be present.

Wallace was positioned at the rear of the truck near the buttons controlling the up and down movement of the chute. He could and did observe the entire operation and the difficulty in getting the chute over the batter board. From his past experience and his knowledge of the danger of such an operation, he should have taken the precaution of checking whether the maximum height to which the chute could be elevated would safely clear the wall upon which plaintiff was working if the chute got out of control. Despite Wallace's admitted knowledge that the chute represented a danger to all persons in the vicinity when located on a slope and the fact that the chute was getting away "almost all the time," he took neither the precaution of checking the arc of the swing of the chute nor of warning those working on the front wall of the possible danger to them should the chute get out of control.

We agree with the trial court's reasoning that Wallace cannot excuse himself for his own negligence by asserting that once he positioned the truck as directed by Dusharme his responsibility for the operation of the chute was ended. Uncontroverted evidence indicates that Wallace was responsible for operation of the control for the chute's vertical movement and was in actual control of the lift device at the time of the accident.

In our opinion, although the directions as to *where* the cement was to be poured was the function of Dusharme, the *manner* in which the cement was to be delivered, so far as the *safety* of the position of the truck and the chute were concerned, was the responsibility of Calabrese's employee, Wallace.

While not determinative of the present issue, we note that there was no reason advanced as to why the truck was not moved when the pouring of cement into the side wall was finished and the pouring into the front wall was to be commenced *except* that it was time consuming to do so. Driving the truck forward, with the chute locked in place by the traveling lock, and then backing up to the new position, would have been a simple matter.

We have concluded that the order granting a new trial sufficiently specifies the reasons upon which it is based within the meaning and intent of section 657 of the Code of Civil

555

Procedure and that such reasons justify the granting of said motion upon the ground stated therein.

Order affirmed.

Shoemaker, P. J., and Taylor, J., concurred.