[Crim. No. 630. Fifth Dist. Oct. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EDDIE NOYOLA LOPEZ, Defendant and Appellant.

### COUNSEL

Peter Haberfeld for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Eddie T. Keller, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARGANO, J.**—Defendant, Eddie Noyola Lopez, was arrested in connection with the stabbing of one, Fabian Garcia. It seems that the injured man had gone to the home of Juanita Espinoza to help her move furniture. At about 3 o'clock in the afternoon defendant came to the home and told Mrs. Espinoza that he wanted to talk to Garcia. The two men went outside and, according to Garcia, defendant jumped him. After a few minutes the fight was broken up by the others present. Then, defendant left. Later, he returned with Robert Lopez and three other men. Defendant entered the house, walked up to Garcia and stabbed him in the mouth. As Garcia fell to the floor, defendant stabbed him in the neck and shoulder.

Defendant was represented by a deputy public defender at his jury trial; he was found guilty of assault with a deadly weapon as charged in the information. Defendant then moved for a new trial or, in the alternative, for a modification of the verdict to a lesser included offense. He also asked the court to substitute Mr. Peter Haberfeld for the deputy public defender and to furnish his new lawyer, without cost, with a full transcript of the testimony adduced at the trial. Defendant's request for the substitution of attorneys was granted, but his request for a free transcript was denied. His motion for a new trial or, in the alternative, for a modification of the verdict, was also denied. Judgment was entered on the jury's verdict, and defendant was sentenced to state prison for the term prescribed by law.

The problem raised in this appeal is basic, and the answer could affect profoundly the orderly and expeditious handling of criminal trials in the trial courts of this state. Stated in general terms, it is whether the due process clause of the Fourteenth Amendment to the United States Constitution requires the State of California to furnish indigent defendants with full trial transcripts in every case in which a motion for a new trial is made or contemplated. Thus, the first question we must answer is whether the trial judge's refusal to furnish defendant's new lawyer with a full transcript of defendant's trial proceeding for Mr. Haberfeld's use in connection with defendant's motion for a new trial was, of itself, a denial of equal protection under the law and produced the "invidious discrimination" proscribed by the United States Supreme Court in *Griffin* v. *Illinois,* 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055]. In that landmark decision, the high court held that the state must provide an indigent with a free reporter's transcript on appeal if the transcript is necessary to secure proper appellate review. As Mr. Justice Frankfurter succinctly stated in a concurring opinion: "If it [the state] has a general policy of allowing criminal appeals, it cannot make lack of means an effective bar to the exercise of this opportunity." (351 U.S. 12, 24 [100 L.Ed. 891, 901].)

■ It is conceded that a state is not required, by federal constitutional mandate, to invest a person who has been convicted of a crime by a jury of his peers with the right to seek a "new lease on life" from the judge who presided at his trial; the right to move for a new trial is a matter of state regulation, and in this state the right is purely statutory. Nevertheless, appellant equates this statutory right with appellate review and correctly argues that once established it "must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." (*Griffin* v. *Illinois, supra; Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]; *Lane* v. *Brown,* 372 U.S. 477 [9 L.Ed.2d 892, 83 S.Ct. 768]; *Draper* v. *Washington,* 372 U.S. 487 [9 L.Ed.2d 899, 83 S.Ct. 774]; *Rinaldi* v. *Yeager,* 384 U.S. 305 [16 L.Ed.2d 577, 86 S.Ct. 1497].) He asserts that the court's refusal to grant his request for a transcript made it impossible for his new lawyer effectively to argue his motion for a new trial and subtly suggests that it deprived him of open and equal access to the courts. Defendant also suggests that such transcripts are available to affluent defendants at every stage of a criminal trial and must be made available to indigent defendants for this reason.

With few exceptions, an accurate trial record, such as a reporter's transcript, is absolutely essential for the proper disposition of a criminal appeal.[1] An appeal is before a different tribunal and, more often than not, is heard many months after the trial is concluded. On the other hand, a motion for a new trial is generally made by the lawyer who participated in the trial, before the judge who presided, and at a time when the testimony adduced is still fresh in everyone's mind. Thus, the need for a full trial transcript to argue a motion for a new trial simply does not exist in the ordinary case (*People* v. *Putty,* 251 Cal.App.2d 991, 1001 [59 Cal.Rptr. 881]). Because of the shortness of time allowed by the statute for new trial proceedings and for the trial judge to rule (Code Civ. Proc. §§ 659, 659a, 660), if we were to hold that full trial transcripts must be provided to defendants, rich or poor, in every case in which new trial motions are made or contemplated, we would not only add to the tremendous burden which the trial courts of this state are already bearing, but in courts with heavily congested criminal trial calendars and a scarcity of qualified court reporters, we could even cause the wheels of justice to come to a grinding halt. We find nothing in the United States Constitution to absolutely require a trial court to interrupt its regular work schedule on each occasion that a motion for a new trial is made in order to give the court reporter time to

---

[1]We observe that even as to appellate review, the United States Supreme Court did not hold that a stenographer's transcript was required in every case. The court implied that a transcript could be dispensed with if other means of affording adequate and effective appellate review to indigent defendants were provided. (*Griffin* v. *Illinois, supra,* 351 U.S. 12, 21 [100 L.Ed. 891, 900].)

prepare a full trial transcript within the time limit prescribed by the statute for argument on the motion.

However, we reject respondent's sweeping suggestion that an indigent is never entitled to a full stenographer's transcript in connection with a motion for a new trial. A new trial motion is an integral part of the trial itself (*People* v. *Sarazzawski,* 27 Cal.2d 7 [161 P.2d 934]), and in a close case is of greater import to the defendant than appellate review; in passing on such a motion, the trial court, unlike an appellate court, may reweigh the evidence and judge the credibility of witnesses (*Yarrow* v. *State of California,* 53 Cal.2d 427, 434 [348 P.2d 687]; *Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165 [153 P.2d 338]; *Ridge* v. *Calabrese Supply Co.,* 263 Cal.App.2d 546 [69 Cal.Rptr. 844]). Thus, since the poor, as well as the rich, are entitled to *effective* representation by counsel at every stage of a criminal prosecution (*People* v. *Havel,* 134 Cal.App.2d 213, 218 [285 P.2d 317]), a situation could conceivably arise where the court's refusal to furnish an indigent defendant with a full reporter's transcript would not only deny him equal protection under the law, if under similar circumstances a full transcript were available to an affluent defendant, but would also deprive him of effective representation by counsel at a critical stage of his trial; the untimely death of the trial lawyer or the judge who presided at the trial are situations which readily come to mind.

■ We hold that an indigent defendant is not entitled, as a matter of absolute right, to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial; but, since a motion for a new trial is an integral part of the trial itself, a full reporter's transcript must be furnished to all defendants, rich or poor, whenever necessary for effective representation by counsel at that important stage of the proceeding. ■ And, because there are no mechanical tests for deciding when the denial of a full reporter's transcript for argument on a motion for a new trial is so arbitrary as to violate due process or to constitute a denial of effective representation, each case must be considered on its own peculiar facts and circumstances.

■ Applying these principles to the circumstances of this case, it is clear that the trial judge's denial of defendant's request for a full transcript of his trial proceeding was not arbitrary, did not violate his right to due process, and did not deprive him of effective representation by counsel. There is no contention that the public defender did not conduct a competent defense on defendant's behalf; no reason was given as to why a substitution of attorneys at that late stage of the trial was necessary or even desirable, and no showing was made as to why the deputy public defender could not have assisted Mr. Haberfeld to prepare for the motion. It is evident from the record that Mr. Haberfeld competently presented and ably

argued defendant's motion and that defendant was not prejudiced in any manner.

To bolster his contention that defendant was prejudiced, Mr. Haberfeld points to a statement contained in the probation report which indicates that Garcia told the probation officer that Juanita Espinoza was not present when the stabbing occurred. Counsel argues that he did not use this "newly discovered evidence" because he "was unsure whether Juanita had testified that she saw a stabbing." Counsel argues that without a transcript, he was unaware of the very substantial materiality of this witness's testimony, and he "did not remind the court that the jury specifically requested that Juanita's testimony be read to them after they deliberated for close to an hour."

We are not persuaded by this argument. If counsel was "unsure whether Juanita testified that she saw a stabbing," he could have readily consulted the reporter's notes for this limited purpose and if necessary, requested a partial transcript. The witness testified that she saw only the stabbing in the mouth because she fled; Garcia testified that he was also stabbed in the neck and shoulder while he was on the floor and that he did not know who else was in the room because he was knocked unconscious. Manifestly, Garcia either meant to tell the probation officer that Mrs. Espinoza was not in the room when he was stabbed in the neck and shoulder or his memory as to the whereabouts of the witness was clouded because he was rendered unconscious.

Defendant also alleges that he was prejudiced because, without a transcript, his counsel was severely handicapped at the sentencing stage. Significantly, defendant was sentenced to state prison only after the court heard his testimony and the testimony of his girl friend, Linda Mendez, in mitigation of sentence. In addition, the trial judge thoroughly reviewed the difficulties of the case and then ordered a state prison commitment because of defendant's past criminal record. When defendant attacked Garcia, he was on parole for a prior similar offense.

■ Defendant's remaining contentions for reversal are twofold. He argues that the trial judge failed to understand his function in ruling on a motion for a new trial because he referred to himself as the thirteenth juror. Defendant also asserts that the judge erred when he allowed into evidence the fact that Garcia's brother had previously fought with defendant and, as an aftermath, testified against him in a felony prosecution. He alleges that this testimony improperly disclosed the commission of another crime and forced him to take the stand to testify.

Admittedly, the trial judge's remark that he was sitting as the thirteenth juror on defendant's motion for a new trial was a misstatement of the law. ■ The thirteenth juror rule has been discredited; on a motion for

a new trial the judge must weigh the evidence and exercise an independent judgment (*People* v. *Robarge,* 41 Cal.2d 628, 633 [262 P.2d 14]). But, even so, the trial judge should not ignore the verdict and decide the case as if there had been no jury. ▌ The record indicates that the judge carefully reviewed the evidence, and his comments in this respect demonstrate that he made an independent evaluation, advanced his own ideas of the testimony that was offered, and concluded for hinself that the guilty verdict was justified. (See *People* v. *Richard,* 101 Cal.App.2d 631, 633-634 [225 P.2d 938].) Defendant was not prejudiced by the judge's remark.

▌ Finally, the trial judge did not err when he allowed respondent to offer evidence that the victim's brother fought with appellant and then testified against him in a criminal prosecution. According to Garcia's testimony, defendant went to Mrs. Espinoza's home, asked Garcia to step outside, and then jumped him. Later, defendant returned with Robert Lopez and three other men and stabbed Garcia in the mouth, and then in the neck and shoulder. Logically, the animosity which may have arisen between the two families as a result of defendant's fight with Garcia's brother and the felony prosecution which followed supplied the motive for defendant's behavior and was a meaningful link in the People's chain of incriminating evidence against him. ▌ While it is the rule that evidence of other crimes is not admissible to prove the accused's disposition to commit crime, evidence to prove a relevant or material fact is not deemed inadmissible merely because it discloses the commission of another crime (*People* v. *Lopez,* 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]). ▌ And, because a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence (*People* v. *Sykes,* 44 Cal.2d 166 [280 P.2d 769]; *People* v. *Gonzales,* 87 Cal.App.2d 867 [198 P.2d 81]).

The judgment is affirmed.

Stone, P. J., concurred.