Filed 5/15/13  P. v. Lee CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DRE'SHAWN MARKUISE LEE,<br><br>     Defendant and Appellant. | A134215<br>(Super. Ct. No. C166071)<br>**ORDER MODIFYING OPINION**<br>**AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on April 17, 2013, be modified in the following particulars:

1.  On page 12, third sentence, beginning "The failure to provide" is deleted.  The following sentence is inserted in its place:

> Finally, upon our review of the record and in light of the information otherwise available to defendant's substitute attorney, we further conclude that defendant's substitute attorney did not require a free trial transcript to properly represent him at the sentencing hearing.

There is no change in the judgment.

The petition for rehearing is denied.

Date:   May 13, 2013

_____
*Margulies, Acting P.J.*

Filed 4/17/13 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DRE'SHAWN MARKUISE LEE,<br><br>    Defendant and Appellant. | A134215<br><br>(Alameda County<br>  Super. Ct. No. C166071) |

Defendant was convicted following a jury trial of one count of first degree murder (Pen. Code, § 187), and assault with an assault weapon (Pen. Code, § 245, subd. (a)(3)), with associated enhancements for personal and intentional discharge of a firearm, and infliction of great bodily injury or death (Pen. Code, §§ 12022.5, subd. (b), 12022.7, subd. (a), 12022.53, subds. (b), (d)). He received an aggregate state prison term of 65 years to life.

In this appeal defendant claims that the trial court's refusal to provide him with a free transcript of the trial proceedings in connection with his new trial motion and the sentencing hearing was a denial of his right to effective assistance of counsel. We conclude that the failure of the court to grant defendant's request for a transcript was not prejudicial error, and affirm the judgment.

**STATEMENT OF FACTS**

At around 4:00 a.m. on December 28, 2009, Oakland police officers responded to the report of a shooting at the 1400 block of 51st Avenue in Oakland. Two shooting victims were discovered, both bleeding from their wounds. The murder victim, Gary Jackson, was lying in the front yard of a residence at the intersection of 51st Avenue and International Boulevard in Oakland. Angelica Mourning was shot and wounded as she sat in the passenger seat of Jackson's car, and was found at the northeast corner of 51st Avenue and International Boulevard.

When police officers contacted Jackson, he had been shot twice, and "wasn't looking in good shape." Jackson gave his name and birth date to one of the officers. The officer then immediately asked "who did that to him," and Jackson responded by moving his head to the south in the direction of the two-story residence at 1425 - 51st Avenue, and uttering, "upstairs." The victim thereafter became incoherent and nonresponsive.

Jackson was taken to Alameda County Hospital, where he died a few hours later from a gunshot that entered through the left buttock, passed in a 40 degree angle through the urinary bladder, the large intestine, and major blood vessels in the pelvic area and abdominal cavity.[1] The cause of Jackson's death was massive internal bleeding and organ damage from the gunshot wound to the torso that resulted in severe loss of blood pressure and irreversible shock. The trajectory of the bullet through the body was possibly consistent with the victim "running from someone" when he was shot, although the location of the shooter was not subject to determination without knowledge of the position of the victim when the shot was fired. The lack of powder burning on the body indicated that the shot was not fired from close range.

---

[1] Jackson also received a second, grazing gunshot wound to his lower lip that was "very, very minor," and did not contribute to his death.

Mourning was also treated at the hospital for three gunshot wounds: two to her right arm, and one to her left wrist. After the shooting, she was not able to move her right arm.

Police investigation at the scene of the shooting resulted in the discovery and seizure of numerous 7.62 by 39 millimeter shell casings from street, sidewalk and stairs in front of 1425 - 51st Avenue. Bullets fragments were found at the scene, and bullet strike marks were observed in Jackson's car parked across the street from the 1425 - 51st Avenue residence.

At 8:15 that same morning, Vernon Days, a maintenance worker for the Oakland Housing Authority, found a Norinco assault rifle, missing its magazine, in a box next to a dumpster located on 50th Avenue, behind the 1425 - 51st Avenue residence. Days gave the rifle to a passing police officer, who extracted a bullet from the chamber of the gun. An examination of the Norinco assault rifle by a firearms expert revealed that all 14 shell casings found at the scene of the shooting were fired from that firearm.

DNA samples were taken from the trigger and butt of the Norinco assault rifle. The trigger sample contained a "mixture of DNA" from two people, although the two donors were successfully differentiated during testing. The "major donor DNA profile" contributed "more DNA than the other donor," who was a "very minor" contributor. The samples taken from the rifle were compared to DNA profile developed from a sample taken from defendant. Defendant's DNA profile was "consistent with all of the DNA types" obtained for the "major donor" of the "biological material from the trigger." The statistical probability of selecting another person with the same major donor profile "would be one in 33 million." The sample taken from the butt of the rifle indicated a mixture of at least three donors. Defendant could not "be eliminated as one of the potential donors to the mixture on the butt of the rifle," although further comparison was limited due to the multiple potential donors and the lack of DNA types for all the donors.

Angelica Mourning testified at trial. In December of 2009, she worked as a prostitute for Jackson, known to her by the nickname "Fat Boy," around 48th Avenue and International Boulevard in Oakland. Early in the morning on December 28, 2009, Jackson drove Mourning in his dark purple or blue car to 48th and International to work as a prostitute. While there, Jackson received a call from Darnell Craig, known as D.C., during which they talked "about snitching or something like that." Jackson then parked the car on 48th, between Bancroft and International, got out, and crossed the street to talk to Craig. When Jackson returned to the car he told Mourning that Craig said defendant accused him "of snitching."

Jackson drove to 51st and International, where he parked the car near the intersection. He directed Mourning to "stay in the car" while he left to "go solve something real quick." Jackson walked across the street, where he talked to Craig for about five minutes. Mourning did not see Jackson or Craig in possession of a gun. She remained in the car, talking by phone with Craig's girlfriend "Juicy." Mourning then heard a round of gunshots from across the street, and "balled up in the front seat." The gunshots ceased momentarily, then resumed and hit the car. The car window glass was shattered and Mourning was hit by three of the shots. Mourning testified that she did not see the shots fired, but was "pretty sure" Craig was not the shooter. After Mourning was shot, a "lady" approached to help, but Craig "drove up and she got inside [his] car and they drove off." Mourning left the car and dragged herself, bleeding, to the intersection of International and 51st, so the ambulance personnel or police would see her.

Chaenda Men, defendant's girlfriend, heard the shooting from her bedroom on the second floor of the residence at 1425 - 51st Avenue, where she lived with her mother, two brothers, defendant, and their son. Around 4:00 a.m. on December 29, 2009, Men was sleeping when defendant arrived home and took a "long gun" – similar in length to the rifle found near the dumpster – out of the bedroom closet. Defendant said he was "sorry" if "he made too much noise," then left the house through the front door. Men

heard defendant walk to the front of the house, followed by a "lot" of gunshots, more than ten. She then heard a woman scream and yell for help.

Men did not see defendant again until late that same afternoon, when he appeared at the front of the house with his mother and sister. Defendant told Men "it was too dangerous" for them to stay in Oakland, so they were "leaving to go to his mom's" house in Tracy. Men gathered her belongings and they drove with defendant's mother to Tracy, where they stayed for six months. While they were living in Tracy, defendant told Men that he killed Jackson because he "was a snitch." Defendant also mentioned to Men that he threw the gun away after the shooting.

In an interview with the police on January 19, 2010, Men initially lied to protect defendant by stating that she had not seen him the morning of the shooting. Later in the interview, however, she felt there was "no point in lying," and gave a statement that was consistent with her testimony at trial. Men also stated during the interview that defendant also told her "Jackson was with another girl" when the shooting occurred.

Men testified that she and defendant "broke up" in July of 2010, over defendant "seeing other women," even while she was pregnant with his child. Men was "upset" with defendant, and told her mother she "hated him," but insisted that she testified truthfully at trial because "it's the right thing to do."

Evidence was presented to corroborate Men's testimony that Jackson was killed by defendant for being a "snitch." An Oakland police officer testified that she interviewed Jackson in connection with an armed robbery at a taco truck at 48th Avenue and International Boulevard on September 28, 2009. Jackson told the officer he was present at the taco truck, and observed defendant carrying a shotgun. After Jackson identified defendant and signed a statement, defendant was arrested for possession of the shotgun. Men confirmed that defendant was arrested in September of 2009, and spent a month in jail before he was released and the charges were dismissed.

Marcel Williams provided a statement to an Oakland police investigator on January 5, 2010.[2] Williams was acquainted with defendant, Jackson and Craig. At just after midnight on the date of the shooting, Williams was in Craig's car with Craig, defendant, and some others at 48th and Bancroft. Defendant complained that Jackson "snitched" on him "with that shotgun" at the taco truck. Referring to Jackson, Craig suggested that defendant "knock him down" for being a snitch. Defendant stated that he intended to retaliate, but would "make it look like an accident."

According to the statement by Williams, Craig then phoned Jackson and told him defendant accused him of being a snitch. Jackson quickly arrived at 48th Street in a purple car, accompanied by a woman known to Williams as "Little Angel." Jackson was confrontational, and exclaimed, "I ain't no snitch." After he explained that he did not give any information to the police that implicated defendant in the prior possession of the shotgun, the encounter "calmed down." Craig and Jackson separately drove onto Bancroft, toward defendant's house on 51st.

Williams's testimony at trial was entirely inconsistent with his prior statement to the police. Williams claimed that he did not know Jackson, defendant, or Craig, and did not give the statements to a homicide inspector that were heard on the recorded interview and played for the jury immediately following his testimony.

## DISCUSSION

Defendant complains that the trial court erred by failing to provide him with a free reporter's transcript of the trial for review by his substitute appointed attorney. After the conclusion of the trial and pronouncement of the jury verdict, defendant moved for substitution of counsel. (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).) The trial court granted the motion, and defendant's new counsel thereafter requested a trial transcript to support an accompanying motion for a new trial on grounds of ineffective

---

[2] The interview was recorded and played for the jury.

assistance of counsel at trial. The bases for the claim of ineffective assistance of trial counsel were specifically delineated in defendant's declaration submitted in support of the new trial motion. The court denied both the request for a transcript and the new trial motion based on the stated findings that defendant was not deprived of his due process rights, trial counsel was not incompetent, and no prejudice to defendant resulted.

Defendant argues that following the substitution of counsel, the denial of his request for a reporter's transcript of the trial proceedings "served to guarantee that he would not have effective representation for his new trial motion and [the] sentencing proceedings." He asserts that without the transcript "[s]uccessor counsel could not properly investigate potential grounds for a new trial motion or adequately argue the ones identified in the declaration attached to appellant's new trial motion." The result, complains defendant, was a "total deprivation" of his "Sixth and Fourteenth Amendment right to the assistance of counsel at critical stages of the criminal proceedings against him." He requests that we reverse the judgment and remand the matter "to the trial court for further new trial motion and sentencing proceedings conducted with the benefit of full trial transcripts."

### I. Defendant's Right to Effective Assistance of Counsel.

We commence our review by delineating the settled principles that govern defendant's claim of constitutionally inadequate representation. (*In re Lucas* (2004) 33 Cal.4th 682, 721.) "To establish a claim of inadequate assistance, a defendant must show counsel's representation was 'deficient' in that it 'fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] In addition, a defendant is required to show he or she was prejudiced by counsel's deficient representation. [Citations.] In determining prejudice, we inquire whether there is a reasonable probability that, but for counsel's deficiencies, the result would have been more favorable to the defendant." (*People v. Frye* (1998) 18 Cal.4th 894, 979.) "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." (*People v. Williams* (1997) 16 Cal.4th 153, 215; see also *In re Jones* (1996) 13 Cal.4th 552, 561.)

In addition, the defendant must affirmatively establish that counsel's actions or omissions were not based on a rational tactical reason. (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.) " ' "[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Where the record is silent as to the reasons for particular actions of trial counsel, an appeal is not the proper vehicle for determining competency. (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) " 'Because the appellate record ordinarily does not show the reasons for defense counsel's actions or omissions, a claim of ineffective assistance of counsel should generally be made in a petition for writ of habeas corpus, not on appeal.' [Citation.]" (*People v. Lucero* (2000) 23 Cal.4th 692, 728–729.)

We agree with defendant that the constitutional right to competent representation applies at all critical stages of a criminal action in which the substantial rights of a defendant are at stake, including the presentation of a new trial motion and sentencing proceedings. (See *People v. Sanchez* (2011) 53 Cal.4th 80, 90–91;*People v. Crayton* (2002) 28 Cal.4th 346, 362; *People v. Smith* (1993) 6 Cal.4th 684, 695; *People v. Bauer* (2012) 212 Cal.App.4th 150, 155.) We also know from the record that the trial court granted defendant's *Marsden* motion, and appointed new counsel to present the new trial motion and represent defendant at the sentencing hearing.

The focus of our inquiry, then, is upon weather the failure of the trial court to provide substitute counsel with a reporter's transcript of the trial caused the representation associated with presentation of the new trial motion to fall below an

objective standard of reasonableness. We must further determine if defendant suffered prejudice as a result of counsel's lack of access to the transcript.

## II. Defendant's Motion for a New Trial.

Our assessment of the propriety of the trial court's denial of defendant's request for a reporter's transcript also implicates the standards that govern new trial motions in the context of the present case. As the trial court recognized, "Although ineffective assistance of counsel is not one of the statutory grounds for granting a new trial, the issue may nonetheless be asserted as the basis for a motion for new trial." (*People v. Reed* (2010) 183 Cal.App.4th 1137, 1143.) In order to prevail on a motion for a new trial alleging ineffective assistance of counsel, the defendant must show that counsel's deficient performance withdrew a potentially meritorious defense or otherwise prejudiced his case to the extent that the trial cannot be relied on as having produced a just result. (*People v. Earp* (1999) 20 Cal.4th 826, 870; *People v. Fosselman* (1983) 33 Cal.3d 572, 583–584.) The granting or denial of a motion is a matter within the sound discretion of the trial court, and in determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background. (*People v. Soojian* (2010) 190 Cal.App.4th 491, 517.)

## III. Defendant's Right to a Trial Transcript.

We recognize that equal protection principles require an indigent criminal defendant to be furnished with a free reporter's transcript of prior proceedings if the transcript is needed for proper appellate review or for an effective defense. (*Griffin v. Illinois* (1956) 351 U.S. 12, 18–19; *Britt v. North Carolina* (1971) 404 U.S. 226, 227– 230.) The rule seeks to ensure that an indigent defendant receives "the basic tools of an adequate defense or appeal, when those tools are available for a price to other [defendants]." (*Britt, supra,* at p. 227.) Two factors were identified in *Britt* as relevant to the determination of need: (1) the value of the transcript to the defendant in connection

with the appeal, and (2) the availability of alternative means to fulfill the same function as the transcript.  (*Ibid.*)

The absolute constitutional right of an indigent criminal defendant to a free reporter's transcript for an appeal does not extend to other stages of criminal proceedings. For purposes other than pursuing an appeal, a "free transcript is a privilege committed to the discretion of the trial judge."  (*United States v. Banks* (M.D. Pa. 1974) 369 F.Supp. 951, 953; see also *United States v. MacCollom* (1976) 426 U.S. 317, 325; *People v. Hayden* (1994) 22 Cal.App.4th 48, 55; *In re Darrell T.* (1979) 90 Cal.App.3d 325, 333.) An indigent defendant preparing a new trial motion "is not entitled, as a matter of absolute right, to a full reporter's transcript of his trial proceedings . . . ."  (*People v. Lopez* (1969) 1 Cal.App.3d 78, 83; see also *People v. Markley* (2006) 138 Cal.App.4th 230, 241; *People v. Bizieff* (1991) 226 Cal.App.3d 1689, 1700.)

Instead, a transcript must be furnished for a new trial motion only when the defendant makes a showing that the requested transcript is necessary for effective representation or to properly present and support arguments asserted in the new trial motion.  (*People v. Markley, supra*, 138 Cal.App.4th 230, 241; *People v. Bizieff, supra*, 226 Cal.App.3d 1689, 1700–1702.)  A trial court "may properly deny a request for free transcripts to prepare a motion for new trial where the indigent defendant fails to show a particularized need for transcripts."  (*People v. Bizieff, supra*, at p. 1702; see also *People v. Hosner* (1975) 15 Cal.3d 60, 64.)  The necessity of the transcript for the preparation of an effective motion for a new trial is not presumed, but rather "the defendant must demonstrate specific need."  (*People v. Markley, supra*, at p. 242.)   "The court must decide each case on its own facts and circumstances in determining whether the defendant has made a sufficient showing of need" for the transcript.  (*Id.* at p. 241.)

A significant factor in the case before us is that new counsel, unfamiliar with the just-concluded trial, had been appointed to present the new trial motion for defendant. Even so, for several reasons we find that defendant failed to make the requisite showing

of a particularized need for the transcript to secure effective representation. First, the reasons presented in support of the very comprehensive new trial motion related almost exclusively to former counsel's *omissions* at trial: failure to offer proof that Marcel Williams was not acquainted with defendant and was coerced by the interrogator into giving a statement to the police; failure of counsel to produce alibi evidence and testimony that defendant was not an occupant of 1425 - 51st Avenue on the date of the shooting; failure to produce a witness to testify that Darnell Craig was seen with the murder weapon before the shooting; failure to more effectively show that Chaendra Men was angry with defendant and therefore lacked credibility as a witness; the failure to inquire into police "suggestions" to Angelica Mourning during interviews with her; and, failure to present additional evidence on the trajectory of the bullet that struck the victim, the DNA results, and the victim's statement to the police at the scene of the shooting.[3] These assertions of incompetence of counsel were effectively presented without benefit of the trial transcript, to a judge who had intimate knowledge of both the evidence offered at trial and former counsel's performance. The transcript was not of critical value to defendant's claims of lack of investigation by counsel and failure to present further evidence.

Also, alternative means for gathering the information necessary to support the new trial motion were available. None of the proffered bases for granting a new trial were dependent entirely on reference to the trial transcript. Defendant's substitute attorney was not precluded from discussing with both defendant and former counsel the evidence presented at trial and the reasons for the claimed deficient representation. Thus, defendant has failed to demonstrate a particularized need for the transcript.

Finally, this court, with a full transcript of the trial available to us as part of the record on appeal, can now assess the claims of incompetence of counsel in the context of

---

[3] Defendant also challenged counsel's decision to essentially concede that he was present at the scene of the shooting, but argue that Craig was the shooter.

the motion for new trial. Our examination of the record persuades us that defendant's assertions of ineffective assistance of counsel are either not sustained, fall into the realm of tactical decisions, or fail for lack of a showing that defendant was prejudiced by counsel's representation. The totality of the evidence that proved defendant's guilt of the murder came from diverse sources that included both convincing physical evidence and independently corroborated testimony from several witness, and was quite overwhelming. The failure to provide defendant with the trial transcript did not deprive him of effective assistance of counsel, and was harmless under any standard. Under the facts presented here, the trial court did not commit prejudicial error by denying defendant's request for the transcript.

Accordingly, the judgment is affirmed.

_____
Dondero, J.

We concur:


_____
Margulies, Acting P. J.

_____
Banke, J.