[No. F010690. Fifth Dist. Jan. 28, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS BIZIEFF, Defendant and Appellant.

[No. F013153. Fifth Dist. Jan. 28, 1991.]

In re NICHOLAS BIZIEFF on Habeas Corpus.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions to be published follow.

**COUNSEL**

Gregory M. Chappel and Handy Horiye, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### FRANSON, J.*—

#### APPEAL

##### STATEMENT OF THE CASE

Appellant Nicholas Bizieff was convicted after a jury trial of three counts of robbery (Pen. Code, § 211).[1] In addition, the allegations that he previously had been convicted of a serious felony (§§ 667, subd. (a), 1192.7, subd. (c)(1), (8)) and had served a prior separate prison term (§ 667.5, subd. (b)) were found to be true. Throughout the proceedings, appellant was dissatisfied with appointed counsel and made five *Marsden* (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) motions, which were denied. After trial appellant waived his right to counsel. At the sentencing hearing, appellant asked to have counsel reappointed. The court denied the motion and sentenced appellant to prison for 13 years.

In the published portion of the opinion, we hold that (1) a witness's testimony regarding the name imprinted on a credit card receipt did not violate the best evidence rule, and (2) appellant was not denied due process and his right to assistance of counsel when his request for transcripts of a mistrial for the purpose of moving for a new trial after a second trial and conviction was denied.

In the unpublished portion of the opinion, we reject appellant's remaining contentions and will affirm the judgment and deny the petition for writ of habeas corpus.

##### STATEMENT OF FACTS

*Count 1*

On the afternoon of August 28, 1986, Diane Cavazos was sitting in a car parked in the alley behind the Bank of America at Van Ness and Tulare in Fresno. She and her two-year-old son were waiting while a friend made a deposit at the bank. A rusty brown truck with a male driver and a female passenger drove up and parked behind her. The man, who had a mustache and glasses, came to the passenger side of her car. He said, "excuse me,"

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise indicated.

reached in through the open window and grabbed Diane's purse. Diane and the man struggled over the purse. Eventually, Diane let go because her son started crying, and she was eight months pregnant. The man returned to the truck and drove away. Diane noticed a license plate in the rear window of the truck and wrote down the number. Diane went to the bank and called the police.

Police Officer Gary Hageman questioned Diane at the scene. He described her as hysterical. She did not tell him her assailant wore glasses and had a mustache. On September 5, she identified appellant as the robber in a photo lineup. On November 10, 1986, she viewed a live lineup. She first selected someone other than appellant as "possibly" the man who robbed her. However, later in the day she told officers she was mistaken and believed the man in position five, appellant, was the robber.

On August 29, 1986, Police Officer LeSage stopped a brown pickup which appellant was driving and issued him a citation for defective taillights. At trial, Diane identified the truck stopped by Officer LeSage as the same truck used by appellant on the day of the robbery. Appellant was driving the same truck when he was arrested on September 4, 1986. Appellant's accomplice, Jackie Gilbert, was in the truck with him.

*Count 2*

On August 31, 1986, a little after midnight, Yvonne Verduzco and Evelyn Diaz were in the parking lot by the Greenhouse Restaurant on Shaw Avenue. When they parked, they noticed a truck with the license plate in the rear window which looked like the truck of a friend of theirs. As they walked to the restaurant, a woman ran up behind Yvonne and grabbed her purse from under her arm. The woman ran back to the truck they had seen earlier.

Yvonne and Evelyn chased the woman who entered the passenger side of the truck. Yvonne reached into the driver's side of the truck, grabbed the driver by his shirt collar and said "take the money but give me my purse back." At the time the driver was trying to start the stalled truck. When he got the truck going, Yvonne let go. Her purse contained $20 and several credit cards. She did not recover her purse or its contents.

On September 3, 1986, Yvonne saw the same photo lineup that was shown to Diane Cavazos. She identified appellant as the driver of the truck. She was not able to identify appellant in a live lineup. Evelyn Diaz was shown different photo lineups with more recent photos of appellant and Jackie Gilbert. She was not able to identify anyone in the photo lineups, but

recognized Miss Gilbert as the woman who had taken Yvonne's purse in a live lineup.

*Count 3*

On August 31, 1986, about 3:15 p.m., Shannon Smith purchased gas at the minimart at Fresno Street and Shaw Avenue. She left her purse and wallet in her truck when she entered the minimart to pay for the gas. When she came out, she saw a man leaning into her vehicle. She shouted at him, and he backed out carrying her purse and wallet. He tried to brush by her. She grabbed him in a bear hug and tried to wrestle her purse away. As they struggled, a woman ran up and said, "you let go of him." The woman began to hit Shannon with her fists. The man got away, and he and the woman left in a blue Nova.

About a week later Shannon was shown two photo lineups. She identified appellant and Jackie Gilbert as the persons involved in the incident. She identified Miss Gilbert but did not identify appellant in the live lineups.

Mr. Abebe, who witnessed the robbery, identified appellant and Miss Gilbert in photo lineups about a week after the incident. At the November 10 live lineup, he identified Miss Gilbert but had some doubts about his choice and did not recognize appellant. He could not identify appellant in court as the robber.

Mr. Kidane Tesfaye was employed at the minimart when the robbery occurred. A few minutes *before* the robbery, the woman who hit Shannon used a credit card to buy gas. Mr. Tesfaye had made a receipt with the credit card impression. He showed a copy of the receipt to Officer Moore, who was investigating the crime. Officer Moore wrote down the name impressed on the receipt and returned the receipt to Mr. Tesfaye. The imprint on the receipt showed the credit card holder as Yvonne Verduzco. The signature on the receipt, although difficult to read, appeared to be the same name. Mr. Tesfaye identified Miss Gilbert from a photo lineup as the woman who had used the credit card just before the robbery.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .  .*

* See footnote, *ante,* page 1689.

## DISCUSSION

1. *The best evidence rule did not require production of the credit card receipt.*

■ At trial, appellant moved to exclude Officer Moore's testimony regarding the name imprinted on the credit card receipt. He contended the receipt itself should have been produced under the best evidence rule. The prosecution made efforts to get the receipt, but it had already been sent to Exxon. The court concluded the credit card itself was the original, and it was not available to the prosecution. Officer Moore was permitted to testify that the invoice contained the impression of the credit card issued to Yvonne Verduzco.

■ The best evidence rule provides "no evidence other than the original of a writing is admissible to prove the content of a writing." (Evid. Code, § 1500.) The rule is designed to minimize the possibility of misinterpreting writings. Since slight differences in written words or other symbols may make vast differences in meaning, the possibility for fraud and mistake in proof of the contents of a writing exists unless the writing itself is produced. (2 Witkin, Cal. Evidence (3d ed. 1986) Documentary Evidence, § 922, p. 883.)

The rule applies to ordinary documents as well as to words or symbols recorded on any tangible thing. (2 Witkin, *op. cit. supra*, § 923, pp. 883-884; Evid. Code, § 250.) A credit card falls under California's best evidence rule as an inscribed chattel, an object that is both a writing and a chattel. (See, e.g., 2 Witkin, *op. cit. supra*, § 926, p. 885; *State* v. *Fontana* (Mo.Ct.App. 1979) 589 S.W.2d 639, 642.)

■ In this case, the "writing" which connected appellant to both the second and third robbery was the Verduzco credit card. The contents of the card—the name Yvonne Verduzco—were in issue. The receipt was evidence that Miss Gilbert had Verduzco's credit card. But the credit card, not the receipt, was the object that directly tied appellant to both crimes. Thus, the trial court correctly concluded the credit card itself was the original writing in issue.

When the original writing is lost or destroyed without fraudulent intent on the part of the proponent, a copy is admissible. (Evid. Code, § 1501.) Likewise, when the original is not reasonably procurable by the proponent by use of the court's processes or other means, a copy is admissible. (Evid. Code, § 1502.) Yvonne Verduzco never recovered her stolen credit cards so the court properly concluded the card used at the minimart was unavailable

to the prosecution. Appellant does not challenge the unavailability of the original, rather he argues under the best evidence rule, the prosecution must have produced the credit card receipt and could not rely on the officer's testimony as to the contents of the receipt.

■ If the proponent of documentary evidence does not have in his possession or under his control a copy of the writing, oral evidence of its contents is admissible. (Evid. Code, § 1505; Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 1505, p. 455 [Deering's Ann. Evid. Code (1986 ed.) § 1505, p. 552].) Unlike Evidence Code section 1501, which requires an effort to locate the original before a copy can be substituted, section 1505 does not require a showing of reasonable diligence to obtain a copy as a foundation for the introduction of testimonial secondary evidence. "Of course, if the opponent knows of a copy that is available, he can compel its production and thus protect himself against any misrepresentation made in the proponent's evidence of the content of the writing." (*Id.* at p. 456)

The district attorney told the court she did not have the credit card receipt because the receipt had been sent to Exxon. Under Evidence Code section 1505, she did not have to show an attempt to obtain the copy. Since a copy of the credit card was unavailable, the officer's testimony regarding the name imprinted on the credit card receipt was admissible.

■ Appellant argues that if the card is the "original," the impression made from the credit card was a "duplicate" and admissible to the same extent as the original under Evidence Code section 1511.[2] We disagree. A credit card receipt is not a duplicate of the credit card. A "duplicate" is "a counterpart produced by the same impression as the original, or from the same matrix . . . or by other equivalent technique which accurately reproduces the original." (Evid. Code, § 260.) Not infrequently, the print quality of credit card receipts is poor. The credit card information imprinted on the receipt can be difficult to read and may not "accurately reproduce[] the original." In addition, a receipt only contains the information set in raised type on the card which may not be all the information included on the card. The two or three receipts generated by the usual credit card transaction would be duplicates of the transaction but not of the credit card itself.

In any event, even if the court erroneously admitted the officer's testimony in lieu of the receipt itself, there was no prejudice to appellant. According to McCormick, ". . . [W]hen an attack is made, on motion for new trial

___

[2] A duplicate is admissible to the same extent as an original unless (a) a genuine question is raised as to the authenticity of the original or (b) in the circumstances, it would be unfair to admit the duplicate in lieu of the original. (Evid. Code, § 1511.)

or on appeal, upon the judge's admission of secondary evidence, it seems that the reviewing tribunal, should ordinarily make inquiry of the complaining counsel, 'Does the party whom you represent actually dispute the accuracy of the evidence received as to the material terms of the writing?' If the counsel cannot assure the court that such a good faith dispute exists, it seems clear that any departure from the regulations in respect to secondary evidence must be classed as harmless error." (McCormick on Evidence (3d ed. 1984) § 243, p. 723.)

Appellant does not dispute the accuracy of Officer Moore's testimony regarding the name on the credit card receipt. The officer's testimony of the name on the receipt was reliable. The inscription "Yvonne Verduzco" was simple, and there was little chance the officer read the name incorrectly or miscopied it into his report. In addition, there was substantial evidence apart from the credit card connecting appellant to both crimes. The victim of the second robbery recognized appellant as the driver of the getaway truck involved in her robbery, and the victim of the third robbery identified appellant as her assailant. Accordingly, error, if any, was harmless.

. . . . . . . . . . . . . . . . . . . . . . . .*

*7. Appellant was not denied due process and his right to assistance of counsel when his request for transcripts of the first trial was denied.*

Appellant's first trial concluded in a mistrial. Mr. Byers, who represented appellant for his second trial, obtained partial transcripts of the first trial but did not find them useful in the second trial. Appellant contended the transcripts were incomplete because they did not contain defense counsel's opening statement or witness Cavazos's testimony. Appellant believed complete transcripts were necessary to impeach prosecution witnesses although his only example of testimony inconsistency was with Diaz's testimony which was included in the transcripts provided. Before trial Mr. Byers investigated appellant's contention that Diaz had committed perjury. He concluded her statement that she was able to identify appellant as the robber at the preliminary hearing when she admitted at trial that she could not identify him was "somewhat short of an admission of perjury."

After the second trial, appellant asked to have new counsel appointed because, among other things, trial counsel did not give him the transcripts

---

*See footnote, *ante,* page 1689.

of the first trial. The court denied the *Marsden* motion. But, due to the increasingly adversarial relationship between appellant and the public defender's office and the fact that the office had been replaced in another criminal case because of the adversity, the court appointed Ms. Hart to represent appellant on a new trial motion and for sentencing. Mr. Byers transferred the file to Ms. Hart, and she requested transcripts of the second trial.

Four months later, Ms. Hart requested transcripts of the mistrial. She stated she needed the transcripts to evaluate appellant's contention that trial counsel was ineffective because he failed to impeach the prosecution witnesses when their identification testimony at the second trial differed from that at the first trial. Neither appellant nor Ms. Hart gave any examples of testimony inconsistency.

The People opposed the motion for transcripts on the ground it would cause further delay in the proceedings. The district attorney who tried the case was scheduled to be out of the country for a period of time after June 17th, and the transcripts would probably not be complete by then because the court reporter for the first trial had moved from Fresno. Neither party indicated where the partial transcripts of the first trial were. Ms. Hart stated she had not had sufficient time to ask Mr. Dockery or Mr. Byers for their notes of the statements given by the witnesses at the first trial.

The court denied the motion for transcripts, finding appellant had not specified how any testimony from the mistrial was relevant to his new trial motion contention of ineffective assistance of counsel. In addition, appellant had not shown that the transcript was the only tool available to impeach the witnesses. After appellant's *Faretta* motion was granted, he made his own motion for transcripts of the first trial. His motion was also denied because it lacked a sufficient showing.

On appeal, appellant submits the case must be reversed and remanded for a new motion for new trial because the court improperly denied his requests for transcripts in violation of his due process rights and his right to counsel.

8. *The state's obligation to provide transcripts.*

■  The state is obligated to provide an indigent defendant in a criminal case with a transcript of prior proceedings where the transcript is "needed for an effective defense or appeal." (*Britt* v. *North Carolina* (1971) 404 U.S. 226, 227 [30 L.Ed.2d 400, 403, 92 S.Ct. 431]; *People* v. *Hosner*, (1975) 15 Cal.3d 60, 64 [123 Cal.Rptr. 381, 538 P.2d 1141].) Two factors are relevant to the determination of need: (1) the value of the transcript to the defendant

in connection with the proceeding for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. (*Hosner, supra,* 15 Cal.3d at p. 65.) The defendant is presumed to have a particularized need for complete transcripts. To overcome the presumption, the state must show defendant's lack of need for, or access to, adequate alternatives that afford him an effective defense. (*Id.* at pp. 66, 68.)

Under *Britt, supra,* 404 U.S. 226 and *Hosner, supra,* 15 Cal.3d 60 absent a proper showing by the prosecution, a defendant is entitled to complete transcripts to prepare for retrial after a mistrial. Unwarranted denial of a timely motion for transcripts constitutes reversible error. (*People v. Hosner, supra,* 15 Cal.3d at p. 66; *People v. Vaughn* (1981) 124 Cal.App.3d 1041, 1044 [177 Cal.Rptr. 773]; *People v. Coats* (1984) 154 Cal.App.3d 1153, 1155-1156 [201 Cal.Rptr. 762].) ██ The Attorney General contends *Hosner's* presumption of need and per se rule of reversal, which apply to requests for transcripts to prepare for retrial, do not apply to appellant's request for transcripts to prepare a motion for new trial.

██ An indigent defendant "is not entitled, as a matter of absolute right, to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial; but, since a motion for a new trial is an integral part of the trial itself, a full reporter's transcript must be furnished to all defendants . . . whenever necessary for effective representation by counsel at that important stage of the proceeding." (*People v. Lopez* (1969) 1 Cal.App.3d 78, 83 [81 Cal.Rptr. 386].) There are no mechanical tests for deciding when the denial of transcripts for a motion for new trial is so arbitrary as to violate due process or to constitute a denial of effective representation. Each case must be considered on its own peculiar facts and circumstances. (*Ibid.*)

In *Lopez, supra,* 1 Cal.App.3d 78, the defendant had been represented at trial by a public defender. After trial he substituted retained counsel for his new trial motion and unsuccessfully requested a free trial transcript for his new attorney's use. This court affirmed the denial of his request.

The court noted that a transcript is "absolutely essential" for an appeal which is heard before a tribunal different from the trial court, usually months after the trial concluded. On the other hand, a motion for new trial is generally made by the lawyer who tried the case before the judge who presided at trial at a time when the testimony is still fresh in everyone's mind. Thus, there is no need for a full trial transcript in the ordinary motion for new trial. (*Lopez,* 1 Cal.App.3d at p. 82.)

In *Lopez,* the denial was proper. There was no contention the public defender failed to conduct a competent defense on defendant's behalf; no

reason why a substitution of attorneys was necessary or desirable at that late stage; and no showing why the public defender could not have assisted the new attorney in preparing for the motion. (1 Cal.App.3d at p. 83.)

Regarding counsel's contention he was not able to rebut a statement in the probation officer's report because he had not heard the testimony, the court replied counsel could have readily consulted the reporter's notes for this limited purpose and, if necessary, have requested a partial transcript. (1 Cal.App.3d at p. 84.)

In *People* v. *Westbrook* (1976) 57 Cal.App.3d 260 [129 Cal.Rptr. 143], defendant was represented at trial by the public defender but after trial substituted retained counsel to prepare a new trial motion. New counsel's request for a transcript of the trial was denied. The appellate court noted that *People* v. *Lopez, supra,* sustained a denial of a request for transcripts to prepare a motion for new trial on two grounds: the problems involved in potential delay and the availability of trial counsel for consultation on the only issue that new counsel indicated he hoped to raise. Neither ground existed in the *Westbrook* case. Delay was not an issue since the trial court had granted new counsel a continuance to prepare for the motion. Further, since one of the grounds that new counsel indicated he hoped to raise was inadequate representation by the original counsel, trial counsel was unlikely to be of assistance. *People* v. *Lopez* was distinguishable, and Westbrook's motion should have been granted if he had shown he was unable to procure a transcript at his own expense. (*People* v. *Westbrook, supra,* 57 Cal.App.3d at p. 263.)

*Lopez* predates *Hosner, supra,* 15 Cal.3d 60, and *Westbrook, supra,* 57 Cal.App.3d 260, does not address whether *Hosner*'s presumption of need or burden of proof allocation apply to a motion for transcripts to prepare a new trial. The Attorney General contends they do not, based on federal cases which apply a different standard of need to requests for transcripts, to prepare motions for collateral relief.

In *United States* v. *MacCollom* (1976) 426 U.S. 317 [48 L.Ed.2d 666, 96 S.Ct. 2086], the court upheld a federal statute which limited an indigent defendant's right to transcripts. The section provided an indigent defendant was entitled to free transcripts to prepare a collateral attack on a final judgment of conviction, only if the trial judge or a circuit judge certified the suit was not frivolous and the transcript was needed to decide issues presented by the suit. (*Id.* at p. 326 [48 L.Ed.2d at p. 675].) The Supreme Court recognized that the statutory provisions under consideration placed an indigent in a "somewhat less advantageous position than a person of means," but concluded the statutory conditions did not deny an indigent equal

protection of the laws. (*Id.* at p. 324 [48 L.Ed.2d at p. 674].) Neither the equal protection clause of the Fourteenth Amendment, nor the counterpart equal protection requirement embodied in the Fifth Amendment guarantees " 'absolute equality or precisely equal advantages,' [citation]. In the context of a criminal proceeding they require only 'an adequate opportunity to present [one's] claims fairly . . . .' [Citation.]" (*Ibid.*) The court noted while an indigent defendant had an absolute right to transcripts on appeal, at the collateral relief stage he stood in a different position. (*Id.* at pp. 324-325 [48 L.Ed.2d at pp. 674-675].) "We think it enough at the collateral-relief stage that Congress has provided that the transcript be paid for by public funds if one demonstrates to a district judge that his . . . claim is not frivolous, and that the transcript is needed to decide an issue presented." (*Id.* at p. 326 [48 L.Ed.2d at p. 675].)

In *United States* v. *Banks* (M.D.Pa. 1974) 369 F.Supp. 951, the district court of Pennsylvania held that an indigent defendant's request for a free transcript to prepare a motion for new trial was committed to the sound discretion of the trial judge. (*Id.* at p. 953.) The court noted that *Britt* v. *North Carolina, supra,* 404 U.S. 226, 227 [30 L.Ed.2d 400, 403], required, as a matter of equal protection, that an indigent prisoner receive " 'the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners.' " (*United States* v. *Banks, supra,* 369 F. Supp. at p. 954, italics deleted.) The court concluded, however, a motion for new trial was neither a defense nor an appeal but fell in between. Thus, a different standard applied. The trial court could grant or deny a request for transcripts in light of the following: (a) whether trial counsel is pursuing the posttrial motion; (b) whether the trial judge is hearing the new trial motion; (c) the length of the trial; (d) the grounds for the motion; (e) the usefulness of the transcripts in substantiating the defendant's allegations; and (f) the likelihood of a dispute between counsel which could be resolved by transcribing all or part of the proceedings. (*Id.* at p. 955.)

■■ Thus, under federal law the trial court may properly deny a request for free transcripts to prepare a motion for new trial where the indigent defendant fails to show a particularized need for transcripts. *Lopez* is in accord with the federal decisions, and *Hosner*'s presumption of need does not apply to a defendant's request for transcripts to prepare a motion for new trial. Under the *Lopez* standard, appellant must show that the requested transcripts are necessary for effective representation by counsel on the motion for new trial. (*People* v. *Lopez, supra,* 1 Cal.App.3d at p. 83.)

The next question is what showing is necessary to entitle the defendant to transcripts to prepare a motion for new trial. The *Lopez* court held there

was no mechanical test; each case had to be decided on its own facts and circumstances.

Appellant contends his new counsel needed transcripts of the mistrial to evaluate, before arguing the motion for new trial, whether trial counsel was ineffective for (1) failing to impeach witnesses at the second trial with their inconsistent testimony from the first trial and (2) failing to enter a "once in jeopardy plea" if warranted by the record of the mistrial. ■ ■ ■ ■ (See, e.g., *Oregon* v. *Kennedy* (1982) 456 U.S. 667, 679 [72 L.Ed.2d 416, 102 S.Ct. 2083]; *People* v. *Hathcock* (1973) 8 Cal.3d 599, 614, fn. 14 [105 Cal.Rptr. 540, 504 P.2d 476].)[5]

■ In this case, Ms. Hart could have determined whether trial counsel rendered ineffective assistance by failing to impeach prosecution witnesses at the second trial with their testimony from the first by comparing the testimony of the prosecution witnesses at the two trials. A complete transcript of witness testimony of the first trial would have enabled Ms. Hart to do this. However, the record discloses that partial transcripts or adequate alternatives were available to determine whether appellant's new trial contentions had at least prima facie merit, thus warranting further assessment before the preparation of additional transcripts.

Mr. Byers had partial transcripts of the first trial, and the record does not indicate why new counsel could not have obtained those transcripts from him. Further, to the extent those transcripts were inadequate to address all the issues appellant felt should be raised in the motion for new trial, appellant should have specified which additional transcripts were needed and why. New counsel could have consulted with Mr. Dockery and ascertained from his notes whether any of the prosecution witnesses substantially changed their identification testimony between the first and second trial. If counsel's consultation indicated substantial changes in testimony, that fact could be presented to the court in support of a motion for transcripts. In addition, new counsel could have ascertained from Mr. Dockery the reason for the mistrial to determine whether the narrow double jeopardy exception of *Oregon* v. *Kennedy, supra,* 456 U.S. at page 679 [72 L.Ed.2d at pages 426-427], applied. In his motion for new trial, appellant did not allege that Mr. Dockery provided ineffective assistance. Thus, Mr. Dockery was available to help new counsel prepare the motion for new trial issues which related to the mistrial.

---

[5] There is a narrow exception to the rule that the double jeopardy clause is no bar to retrial after a mistrial. The exception applies in those cases in which the prosecutor's conduct giving rise to the defendant's successful motion for mistrial was intended to provoke the defendant into moving for mistrial.

Since appellant already had transcripts of the second trial, he should have indicated specifically which additional transcripts were needed and why. Requiring appellant to show with specificity why additional transcripts were needed was reasonable because a more circumscribed transcript request could be complied with in less time, and appellant's case was already six months' posttrial when the motion was made. Since appellant failed to make an adequate showing of need, the court correctly denied his motion for additional transcripts. (Cf. *In re Darrell T.* (1979) 90 Cal.App.3d 325, 333 [153 Cal.Rptr. 261] [court properly denied a juvenile's motion for transcripts of the fitness hearing of a codefendant where there was no showing that anything material to the ultimate adjudication of the minor's guilt or innocence transpired at that hearing].)

. . . . . . . . . . . . . . . . . . . .*

### DISPOSITION

The Attorney General's motion to augment the record and unseal the *Marsden* transcripts is denied. The judgment is affirmed. Appellant's in propria persona motions are stricken, and the petition for writ of habeas corpus is denied.

Best, P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied April 10, 1991.

---

*See footnote, *ante,* page 1689.