Filed 11/19/14  P. v. Briggs CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B246695 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA118498) |
| v. | |
| RAYMOND LEE BRIGGS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Affirmed.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Raymond Lee Briggs was found guilty after a jury trial of forcible rape (Pen. Code, § 261, subd. (a)(2))[1] with true findings by the trial court in a bifurcated proceeding that he was subject to sentencing under the "One Strike" law (§ 667.61) and had suffered one prior serious or violent felony conviction within the meaning of section 667, subdivision (a), and the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). On appeal he argues the trial court abused its discretion in denying his posttrial motions for trial transcripts and appointment of a private investigator, improperly denied his motion for a new trial and violated his right to a fair and impartial jury when it failed to inquire into possible juror misconduct. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Summary of the Evidence at Trial; Verdict; the Initial Motion for a New Trial*

Roberta C., who worked as a prostitute, testified Briggs was driving near the intersection of 108th and Figueroa Streets in the early morning of June 2, 2011 when he stopped and offered her $40 to watch him masturbate. Roberta, who did not know Briggs, agreed and got into his car. After rejecting Roberta's suggestion of a nearby alley as the site for their illicit activity, Briggs drove out of the area.

After traveling a short distance, Briggs turned into an alley, grabbed Roberta by the throat and began to choke her, pushing his sharp fingernails into her throat as he did. Briggs told Roberta he was going to rape her and threatened to kill her if she screamed. Roberta attempted to leave the car as Briggs was pulling his pants down, but he grabbed her and slammed the car door on her left calf. Briggs then raped Roberta for approximately 30 to 40 minutes, licking tears from her face when she cried. Briggs inserted his finger into Roberta's anus; she felt pain as he dug his sharp fingernail into her. Roberta testified she did not resist because she thought she was going to die. Briggs drove Roberta back to her neighborhood after the sexual assault was completed and again threatened to kill her if she notified the police of the attack.

---

[1] Statutory references are to the Penal Code.

2

Roberta wrote down Briggs's vehicle's license plate number after she got out of the car. Once Briggs left the area, she called the police emergency number and reported she had been raped. A recording of that call was played in court. When the police did not respond, Roberta called the emergency number a second time. She finally walked to a police station, about two blocks away, and reported the rape. Prior to leaving for the police station, Roberta changed from the miniskirt she had been wearing during the attack into a pair of jean shorts.

Following Roberta's report of the rape, she was taken to the Santa Monica Rape Crisis Center where she was interviewed and examined by Madelynn Finkelstein, a nurse, approximately five hours after the attack. Roberta's examination was recorded, and portions were played in court. Roberta had a bruise on her calf, and there was bleeding from her anus. Finkelstein found a laceration on the anus. No vaginal injuries were found; no sperm was detected. Vaginal and genital swabs, as well as swabs from the area around Roberta's mouth, were taken. The People did not present the results of any DNA testing at trial.

Several days after the attack Roberta identified Briggs from a photographic lineup. Briggs was arrested on June 8, 2011 in a car with the license plate number Roberta had recorded.

At trial Shasha F., who also worked as a prostitute, testified Briggs picked her up in September 2005, threatened her with a gun and raped her. Shasha identified Briggs from a photographic lineup following the rape and again identified him in 2011 at a live lineup. The People also introduced into evidence an abstract of judgment, and the prosecutor and defense counsel stipulated Briggs had been convicted of rape by force or fear in 1998.

Briggs did not testify. His counsel introduced testimony from Los Angeles Police Officer Richard Delgado, who took Roberta's initial statement on June 2, 2011, which differed in some of the details of the assault from Roberta's trial testimony. Similarly, testimony from Los Angeles Police Detective Marya Mason, the investigating officer in

3

the case, indicated some differences in Roberta's narrative (for example, whether Briggs slammed the car door on her leg prior to or after he had raped her). Finally, Cari Caruso, a certified sexual assault nurse examiner, testified Roberta's injuries were equally consistent with consensual and nonconsensual intercourse.

  2. *Jury Deliberations and Verdict*

  The court completed its instructions to the jury on the afternoon of July 30, 2012, and the jury retired to deliberate at 3:02 p.m. The jury was excused for the evening at 4:00 p.m. Deliberations resumed on July 31, 2012 at 10:00 a.m. At 10:36 a.m. the jury informed the court it had a question, "What is the procedure for requesting and receiving read-back of a witness['s] testimony?" The court responded in writing. At 12:09 p.m. a second question was presented, "A juror wrote several pages of notes and brought them into deliberations. Does that violate any rules?" The court advised the jury to take its lunch break and said it would address questions at 1:45 p.m. The jury resumed its deliberations at 1:03 p.m. and informed the court it had reached a verdict at 1:28 p.m.

  The court told counsel about the question regarding notes and said, "I took this to mean that this was outside of the notes that are taken in trial, because I would expect that everyone would bring those in. But as far as notes go, if somebody wants to write down their thoughts and bring them in, that is fine." Asked if he had any statement he wished to make, defense counsel responded, "I don't know exactly what the juror meant with the question. I would hate there to be a situation where one juror took notes and was referring to their notes. And then the rest of the jurors thought that somehow referring to your notes was improper. . . . I only take this in conjunction that they asked a question earlier about read-back, which may suggest that someone—that there is a conflict in recollection of what was said, and maybe somebody is referring to notes, and their notes say one thing—and I don't know if it's an issue or not, but I think maybe we should inquire have they moved past that point or did they want that issue addressed." The court then reminded counsel it had instructed the jury to continue deliberating after asking a question since it might take some time to prepare an answer, "which is what occurred

4

here." Accordingly, the court declined to make any inquiry "since they have now buzzed with a verdict, prior to any answer that would have been formulated."

The jury returned to the courtroom, and the court took the verdict. The jurors were polled, and all agreed with the verdict finding Briggs guilty of forcible rape. In bifurcated proceedings on August 1, 2012, after Briggs had waived his right to a jury trial, the court found true the prior serious felony conviction allegations under the one strike and three strike laws, as well as section 667, subdivision (a).[2]

3. *Briggs's Posttrial Self-representation and Requests for Trial Transcripts and Appointment of a Private Investigator*

The deputy public defender representing Briggs moved for a new trial on the ground there was insufficient evidence to sustain the verdict. Defense counsel also filed a sentencing memorandum and asked the court to dismiss Briggs's prior strike conviction (see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497). The court denied the new trial motion on September 27, 2012. On that same day the court granted Briggs's request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562], and relieved the public defender's office as attorney of record. Accordingly, sentencing was continued, and the matter put over for two weeks to allow time for defense counsel's files to be provided to Briggs.

When the case was next on calendar on October 16, 2012, Briggs stated his intention to move for a new trial based, in part, on the purported ineffectiveness of his trial counsel. The court directed Briggs to file any motions within 30 days. Briggs informed the court he was currently reviewing 800 pages of discovery materials and requested copies of photographs of the victim that had been admitted into evidence but were not included in the documents he had. The court granted that request and scheduled a further hearing for October 24, 2012.

---

[2] The court also found true a prior prison term enhancement allegation under section 667.5, subdivision (b). The court subsequently struck that allegation when sentencing Briggs.

On October 24, 2012 Briggs asked the court to have money placed in his "pro. per. account" for legal supplies. The court granted the request and asked, "What else do you need?" Briggs replied, "I was also hoping to get a copy of the augmented trial transcript." The court denied that request, explaining, "They're not prepared in advance. What happens is that once there is an appeal filed, then the transcripts are prepared and they're sent to either your appellate attorney or to the Attorney General—well, to both really—and then they'll go through them. But at this point in time the court would not order those, and I wouldn't do it in any case. I'm just letting you know." Briggs replied, "Okay." The court continued, "But I'll tell you this, for what it's worth. You were here for the trial, and so was this court. So, I mean, whatever you need to go into, you can do that. If there is any portion that is specific that the court has questions about . . . what I would do is probably just inquire of my reporter, just to give me read-back of that." Briggs again responded, "Okay." After a further comment from the court, Briggs said, "Because part of my motion –." The court interjected, "No, I know you want to bring a new trial motion." Briggs responded, "Yes, Sir." And the court once again stated, "The court just doesn't pay for it at this point in time. And so if you could afford to do it, you could do it. . . . It's not you specifically, it's just any case."

After his request for a trial transcript was denied, Briggs asked for a "legal runner"—someone to do legal research for him. The court denied that request as well, reminding Briggs he was entitled to appointed counsel but had elected to represent himself. Briggs then asked, "What about a private investigator?" The court told Briggs he had to file a motion for an investigator and provide a specific reason for one to be appointed. Briggs replied, "Okay." The matter was continued to October 30, 2012.

At the October 30, 2012 hearing Briggs presented the court with a handwritten motion to appoint a private investigator. Briggs stated he needed an investigator to locate possible exculpatory evidence that had not been provided in a timely manner to Briggs's defense counsel by the prosecutor and to interview Detective Mason about mistakes she had made during the investigation, Rape Crisis Center nurse Finkelstein about Roberta's

inconsistent statements during the sexual assault examination and his defense counsel, Deputy Public Defender Jovan Blacknell, about the delayed disclosure of discovery materials.  The court reviewed the papers and denied the motion for lack of good cause.  When Briggs said, "I don't understand why," the court explained, "You don't get to reinvestigate the case.  We're not here to retry the case.  You've been found guilty by a jury, and there is nothing there for which there is good cause to provide an investigator for you to do these, this investigation at this point in time."

Briggs then raised the specific issue of delayed production of the recordings of Roberta's police emergency calls.  The prosecutor confirmed the recordings were not turned over until immediately before trial.  Briggs pointed out that only the recording of the first call had been played for the jury and asserted Roberta had impeached her own statements in the second call, "which is why I believe the prosecution didn't present it, and also why the detective waited until the very, very last minutes [to provide them to defense counsel]."  The court responded, "If Mr. Blacknell was not able to go forward at that time, he would have brought a motion to continue based on not having the discovery in a timely fashion, or he would have asked for sanctions."  The court added, based on its experience with and respect for defense counsel, it was sure evidence concerning the second recording would have been introduced if it were beneficial to Briggs case.  The matter was continued to November 15, 2012 for the hearing on the new trial motion.

4.  *Briggs's Retention of Private Counsel and the Renewed Requests for Trial Transcripts and Appointment of a Private Investigator*

On November 15, 2012 George W. Woodworth appeared on behalf of Briggs as privately retained counsel.  (Woodworth subsequently explained he had represented Briggs in connection with his 1998 rape conviction.)  Woodworth orally renewed Briggs's request to have an investigator appointed and for full trial transcripts.  The court denied the motions but also gave Woodworth two weeks to file written motions to address those matters.

On November 28, 2012 Woodworth filed a motion for new trial on the grounds of prosecutorial misconduct, newly discovered evidence, ineffective counsel and erroneous

rulings by the court. Woodworth attached a declaration in which he renewed his request for the court to order a trial transcript for use in connection with the new trial motion. The prosecutorial misconduct identified was the delayed production of the two recordings of the victim's emergency calls; the newly discovered evidence allegation was based on Briggs's stated good faith believe that an investigator would find something helpful. Woodworth cautiously declared, "Of course, I am not able to predict what evidence may be located or uncovered, but leave to amend to include such evidence is also requested." The charge of ineffective assistance was similarly predicated on Briggs's perception, not Woodworth's, of the quality of the defense. Finally, the claim of erroneous rulings leading to improperly admitted evidence was dependent on Woodworth's examination of the trial transcripts, which "if borne out . . . could also be proper foundation for this motion for new trial."

In a separate declaration in support of order for investigator filed concurrently with the motion for new trial, Woodworth stated that experts or examiners of the physical evidence in the case needed to be contacted for possible new evidence (including the possible absence of DNA evidence linking Briggs to the crime). He also indicated an investigator was needed to explore the development and use of the photographic lineups in the case, as well as issues relating to the handling, availability and use of the two recordings of Roberta's calls to the emergency operator. Although Woodworth had been privately retained by Briggs's family, he stated Briggs was indigent and the terms of Woodworth's retainer agreement specifically excluded payment of costs for investigators or expert witnesses.

At the hearing on November 28, 2012 Woodworth advised the court it was nearly impossible to prepare a proper new trial motion without the trial transcripts. The court again denied the motion for a transcript. It agreed to review the renewed motion for appointment of an investigator in camera. That motion, too, was ultimately denied.

8

5. *Denial of the Second Motion for New Trial*

The court denied the second motion for new trial on January 7, 2013. Woodworth candidly acknowledged it was "not much of a motion," and once again explained it was virtually impossible for him to prepare a motion citing specific instances of prosecutorial misconduct or erroneous evidentiary rulings when he had not been trial counsel and did not have a copy of the trial transcript.

Following denial of the new trial motion, the court sentenced Briggs to an aggregate indeterminate state prison term of 30 years to life.

**DISCUSSION**

1. *The Trial Court's Denial of the Requests for Trial Transcripts Was Not Prejudicial Error*

An indigent criminal defendant must be provided a free transcript of prior proceedings when the transcript is necessary for an effective defense or appeal. (*Britt v. North Carolina* (1971) 404 U.S. 226, 227 [92 S.Ct. 431, 30 L.Ed.2d 400]; *People v. Hosner* (1975) 15 Cal.3d 60, 64-65.) However, "an indigent defendant is not entitled, as a matter of absolute right, to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial; but, since a motion for a new trial is an integral part of the trial itself, a full reporter's transcript must be furnished to all defendants, rich or poor, whenever necessary for effective representation by counsel at that important stage of the proceeding." (*People v. Lopez* (1969) 1 Cal.App.3d 78, 83.) "There are no mechanical tests for deciding when the denial of transcripts for a motion for new trial is so arbitrary as to violate due process or to constitute a denial of effective representation. Each case must be considered on its own peculiar facts and circumstances." (*People v. Bizieff* (1991) 226 Cal.App.3d 1689, 1700.) In determining the need for a trial transcript, the trial court properly considers the value of the transcript to the defendant in connection with the proceeding for which it is sought and the availability of alternatives that would fulfill the same function as a transcript. (*Hosner*, at pp. 64-65.) The court may deny a motion for free transcripts to prepare a new trial

motion if the defendant fails to show a particularized need for the transcripts. (*Bizieff*, at p. 1702.)

The trial court's categorical denial of Briggs's initial request for a copy of the trial transcripts for use in preparing a motion for new trial on the ground an indigent defendant is not entitled to a transcript until an appeal has been filed was unquestionably wrong.[3] Yet that ruling could not possibly have prejudiced Briggs because he had relinquished his self-represented status and retained private counsel who made his own request for full trial transcripts on Briggs's behalf before any new trial motion was filed. Accordingly, that error, as egregious as it was, does not justify reversal of the judgment. (See Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *People v. Alexander* (2010) 49 Cal.4th 846, 896 ["typically, a defendant having proved error must further establish there exists a reasonable probability he or she would have obtained a more favorable outcome in the trial of guilt or innocence were it not for the error"]; see also *People v. Braxton* (2004) 34 Cal.4th 798, 816-818 ["[t]he proposition that a trial court's refusal to hear a defendant's motion for a new trial is a kind of error that 'is not covered by' the constitutional harmless error provision is unsound"; a trial court's refusal to hear a new trial motion is not reversible error if the appellate record allows the reviewing court to determine the new trial motion lacked merit or the trial court would properly have exercised its discretion to deny the motion].)

---

[3] The court's additional explanation a trial transcript was unnecessary in this case because Briggs had been at trial, as had the judge, and any specific question about what had happened could be answered by ordering a read-back of testimony, properly focused on the absence of a showing of particularized need. However, the court's ruling was plainly based on its misunderstanding of the law in this area, not its evaluation of the circumstances of Briggs's request. As the court informed Briggs, "It's not you specifically, it's just any case."

Woodworth's brief oral request for transcripts during his initial appearance in the case was summarily denied; but, as discussed, the court granted him leave to file a written motion to address the issue. In the subsequent written request for trial transcripts, filed together with the motion for new trial itself, Woodworth asserted it was nearly impossible for new counsel who had not been present at trial to prepare a proper motion for new trial without transcripts. Yet other than saying Briggs was generally dissatisfied with Blacknell's representation of him, Woodworth identified no specific issue relating to his claim of ineffective assistance of counsel that would be facilitated by review of the trial transcripts. Similarly, Woodworth indicated the transcripts might reveal erroneous rulings made by the trial court but did not suggest what any of those rulings were or even in what portion of the trial they had occurred.

In effect, Woodworth requested full trial transcripts so he could evaluate whether there were any arguable issues that could be raised in a motion for new trial, not to support any particular claim that would justify granting a new trial. Briggs's contention it was an abuse of discretion to deny his request for trial transcripts under these circumstances is tantamount to the assertion that new counsel, retained or appointed after trial, is always entitled to full trial transcripts for the purpose of making a new trial motion. That is not the law. (See, e.g., *People v. Lopez, supra*, 1 Cal.App.3d at pp. 83-84 [affirming denial of request by newly retained counsel for full reporter's transcript of trial proceedings for use in preparation of a new trial motion]; see also *People v. Bizieff, supra*, 226 Cal.App.3d at pp. 1703-1704 [affirming denial of request for full reporter's transcript of defendant's first trial, which resulted in mistrial, by newly retained counsel following verdict in second trial].) The mere substitution of new counsel or a general, nonspecific claim of ineffective assistance of counsel does not establish a need for a trial transcript for purposes of a motion for new trial; the defendant (or his or her new counsel) must still show that the circumstances surrounding the challenge to defense counsel's representation require a full transcript. (See *People v. Markley* (2006) 138 Cal.App.4th 230, 241 ["a trial court may properly deny a request for free transcripts for use in a

11

motion for new trial or for use in other requests for collateral relief unless the indigent defendant first demonstrates that the transcript is necessary for effective representation by counsel"]; *Bizieff*, at pp. 1702-1704 [same]; cf. *United States v. MacCollom* (1976) 426 U.S. 317, 325 [96 S.Ct. 2086, 48 L.Ed.2d 666] [defendant seeking collateral relief was in "different position" from one pursuing direct appeal].) Because there was no adequate showing of particularized need for full trial transcripts, the trial court properly exercised its discretion in denying the requests by Briggs's new counsel.

In addition, Briggs has failed to demonstrate he was prejudiced by his lack of trial transcripts. (See *People v. Braxton, supra,* 34 Cal.4th at p. 816.) To the extent Briggs suggested his new trial motion would be based on an argument his trial counsel failed to adequately prepare the case and did not introduce potentially exculpatory evidence (the recording of the second emergency call by Roberta or forensic test results from the swabs taken during Roberta's sexual assault examination), his new counsel could have investigated and, if appropriate, briefed those issues without trial transcripts. Those claims focus on what did not happen at trial, not what did. Moreover, Briggs's appellate counsel had the complete trial transcripts. Nonetheless, in arguing that denial of the transcripts for use in preparing the new trial motion was reversible error, appellate counsel pointed to nothing in the transcripts themselves that could have been used in a new trial motion (for example, no erroneous evidentiary rulings or instances of prosecutorial misconduct during the trial) or that demonstrated prejudice. For that reason, as well, we reject Briggs's claim.

2. *The Court Did Not Abuse Its Discretion in Denying the Requests for Appointment of a Private Investigator*

"'An indigent defendant has a statutory and constitutional right to ancillary services reasonably necessary to prepare a defense. [Citations.] The defendant has the burden of demonstrating the need for the requested services. [Citation.] The trial court should view a motion for assistance with considerable liberality, but it should also order the requested services only upon a showing they are reasonably necessary. [Citation.] On appeal, a trial court's order on a motion for ancillary services is reviewed for abuse of

discretion.'"  (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1255; see *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319 [right to counsel "includes the right to reasonably necessary ancillary defense services"]; *People v. Rhodes* (1989) 212 Cal.App.3d 541, 554 ["'it is only *necessary* investigative services to which an indigent defendant is entitled'"].)

As was true with their requests for full trial transcripts, Briggs's and his new counsel's applications for appointment of a private investigator failed to demonstrate an investigator was reasonably necessary to assist in the preparation of the new trial motion. There was no showing an investigator was required to interview Briggs's trial counsel to determine when he received discovery materials from the prosecutor or why he did not seek to do forensic testing on the swabs collected from Roberta.  Such an interview could have been conducted by Briggs's new counsel himself:  There was no indication the deputy public defender would not have cooperated fully.  Similarly, Briggs's general assertion a private investigator was necessary to attempt to develop new evidence, at least in the absence of some specific factual showing that exculpatory evidence likely existed but was overlooked by trial counsel, was insufficient to satisfy the standard for providing posttrial ancillary services to an indigent defendant.  (See *People v. Beardslee* (1991) 53 Cal.3d 68, 100 [defendant "had the burden of showing that the investigative services were reasonably necessary by reference to the general lines of inquiry he wished to pursue, being as specific as possible.  [Citation.]  Although a motion for assistance should be viewed with considerable liberality [citation], on appeal the trial court's order is presumed correct.  Error must be affirmatively shown"]; see also *People v. Hajek and Vo, supra,*  58 Cal.4th p. 1255 ["[t]he defendant has the burden of demonstrating the need for the requested services'"].)

3. *The Motion for New Trial Was Properly Denied*

"'"We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard."  [Citations.]  "'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb

13

the ruling absent a manifest and unmistakable abuse of that discretion.'"'" (*People v. Lightsey* (2012) 54 Cal.4th 668, 729; accord, *People v. McCurdy* (2014) 59 Cal.4th 1063, 1108.)

Briggs essentially concedes his new trial motion, as presented, was inadequate. Rather, he argues the trial court abused its discretion in denying his motion without first providing his new counsel with a copy of the trial transcripts or the services of a private investigator. As discussed, both of those requests were properly denied. Accordingly, it was not error to deny the new trial motion as well.

Briggs also suggests several comments by the trial court during the hearing on the new trial motion reveal the court was neither exercising reasoned judgment nor deciding the matter without bias toward the defendant when it denied the motion. In particular, when discussing the prosecutor's apparent failure to turn over the recordings of Roberta's calls to the emergency operator in a timely fashion, the court stated, "[W]ith all due respect to you, Mr. Woodworth, perhaps your client shouldn't be out raping prostitutes and they wouldn't have to generate 911 calls." We agree that comment was entirely inappropriate. (See Cal. Code of Judicial Ethics, Canon 3.B(4) ["[a] judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity"].)[4] Nonetheless, viewed in context this single intemperate remark does not demonstrate an "arbitrary determination, capricious disposition or whimsical thinking" (*In re Cortez* (1971) 6 Cal.3d 78, 85) or otherwise establish an abuse of discretion that provides a basis for disturbing the court's denial of the new trial motion.

---

[4] The court also responded to Briggs's contention his trial counsel had provided ineffective assistance by stating he was "extremely offended" by the criticism and observing that defense counsel had done an outstanding job. Although perhaps injudicious, those comments do not suggest the court failed to properly consider any of the posttrial motions on the merits.

14

4. *There Was No Possible Juror Misconduct That Required Investigation*

A new trial may be granted when a jury receives evidence out of court other than an authorized view of the scene or if the jury has engaged in misconduct that has prevented fair and due consideration of the case. (§ 1181, subds. 2 & 3; see *People v. Hayes* (1999) 21 Cal.4th 1211, 1255.) "When a trial court is aware of *possible* juror misconduct, the court 'must "make whatever inquiry is reasonably necessary'" to resolve the matter. [Citation.] It must do so, however, only when the defense comes forward with evidence that demonstrates a 'strong possibility' of prejudicial misconduct." (*Hayes*, at p. 1255.) Briggs's claim the trial court failed to make the required investigation of possible juror misconduct in this case, thereby depriving him of his right to a fair and impartial jury, lacks merit.

As discussed, shortly before reaching its verdict, the jury sent the court a question, "A juror wrote several pages of notes and brought them into deliberations. Does that violate any rules?" The court indicated the note likely meant one of the jurors had written down his or her thoughts and brought them into the jury room, which the court indicated "is fine." Defense counsel, although conceding he did not know what the juror meant, thought perhaps the jurors were unsure if they could refer to the notes they had taken during trial. However, counsel also observed the jurors might have already moved past the point where their question needed an answer. The court responded they had, explaining the jury had continued deliberating after asking the question and had signaled it had reached a verdict. Accordingly, the court declined to make any further inquiry on this point.

It is, of course, appropriate for jurors to take notes during trial and to use them during deliberations: The jury here was fully and properly instructed pursuant to CALCRIM No. 202 with respect to the use of their trial notes. (See Cal. Rules of Court, rule 2.1031 [jurors permitted to take notes in all criminal and civil trials].) It is also permissible, as the trial court observed, for a juror to make notes reflecting his or her own thoughts and to bring those notes into deliberations. (See *People v. Collins* (2010)

15

49 Cal.4th 175, 255; *Bormann v. Chevron USA, Inc*. (1997) 56 Cal.App.4th 260, 263-264.)  There is absolutely no basis on this record to believe, as Briggs now contends, that the notes referred to in the jury's question did not fall within one of those two permissible categories or that they otherwise included extrinsic information not properly considered by the jury.  To the contrary, the jury was expressly admonished not to consult sources of information outside of the evidence actually presented during trial.  Absent a contrary showing, we presume the jury followed those instructions.  (See *People v. Hajek and Vo, supra*, 58 Cal.4th at p. 1216; *People v. Homick* (2012) 55 Cal.4th 816, 867.)

Indeed, far from showing a strong possibility of prejudicial misconduct, defense counsel suggested, at most, that the jurors might need to be instructed (or reinstructed) on what they could do with their notes, not what was prohibited.  In any event, given that the jury had continued to deliberate and signaled it had reached a verdict, the court acted well within its discretion in declining to respond to the jury's question or to inquire further as to its meaning.  "[N]ot every incident involving a juror's conduct requires or warrants further investigation.  'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court.'"  (*People v. Cleveland* (2001) 25 Cal.4th 466, 478.)  There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:


WOODS, J.                    SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.